Filing # 54269373 E-Filed 03/27/2017 04:58:21 PM

IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA

CASE NO.:
DIVISION:

DAWN BROGDEN,

     **Plaintiff,**

v.

AUTO-OWNERS INSURANCE COMPANY,

     Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, DAWN BROGDEN (hereinafter "Plaintiff"), by and through her undersigned attorneys, hereby sues Defendant, AUTO-OWNERS INSURANCE COMPANY (hereinafter "AUTO-OWNERS"), and alleges as follows:

1.    This is an action seeking damages in excess of $15,000.00 exclusive of costs, interest and attorney's fees.

2.    At all times material hereto, the Plaintiff was a resident of Duval County, Florida.

3.    At all times material hereto, AUTO-OWNERS was and is a foreign profit company duly licensed to transact business in the State of Florida and maintained agents for the transaction of its regular business in Jacksonville, Duval County, Florida.

4.    Venue for this matter is proper as the events giving rise to this action occurred in Duval County, Florida.

5.    On or about August 22, 2014, at approximately 10:46 p.m., Dalmarie Enid Orengo

Pacheco (sometimes hereinafter referred to as the "negligent underinsured driver") owned and operated a 2005 Toyota Corolla on San Jose Boulevard near the intersection with Rubin Road in Jacksonville, Duval County, Florida.

6.      On or about that time and place, Plaintiff was a passenger on a motorcycle lawfully operated by her husband, James Brogden, who was traveling north on San Jose Boulevard near the intersection with Rubin Road in Jacksonville, Duval County, Florida.

**COUNT I**
**UNDERINSURED MOTORIST CLAIM**

The Plaintiff, DAWN BROGDEN, re-alleges paragraphs 1-6 above, and further alleges:

7.      That the Plaintiff brings this action on behalf of herself.

8.      The motor vehicle crash giving rise to this count occurred on or about August 22, 2014, on San Jose Boulevard near the intersection of Rubin Road, Jacksonville, Duval County, Florida.

9.      Prior to the date of said motor vehicle crash, the motorcycle (2007 Polaris Victory Ness, VIN 5VPBC26D173005286) in which Plaintiff was a passenger, was covered in full force and effect by an automobile insurance policy issued by AUTO-OWNERS with policy number 49-706-461-00 (sometimes hereinafter referred to as "the Policy") that provided uninsured/underinsured motorist coverage with limits which were equal to the limits of bodily injury coverage under the Policy. A copy of Policy is attached as Exhibit "A" and incorporated herein by reference.

10.     On or about August 22, 2014, Dalmarie Enid Orengo Pacheco negligently operated or maintained the motor vehicle she was operating so that is wrongfully caused the motorcycle which the Plaintiff was a passenger to crash.

Page 2 of 5

11.     The negligent underinsured motorist was an underinsured motorist by virtue of having insufficient limits of bodily injury coverage on her vehicle on August 22, 2014.

12.     The Policy was in full force and effect on the date and at the time of the August 22, 2014 motor vehicle crash described above and provides underinsured motorist coverage to the Plaintiff for injuries, damages or losses that have been suffered by the Plaintiff as a result of the above-referenced motor vehicle crash.

13.     As a result of the negligence of the underinsured motorist, Dalmarie Enid Chengo Pacheco, the Plaintiff was injured in and about her body resulting in pain and suffering, incurred medical and related expenses in the treatment of her injuries, disability, disfigurement, mental anguish, loss of capacity to enjoy life, loss of earnings, loss of earning capacity in the future, and aggravation of a previously existing condition.  The injuries and losses are either permanent or continuing in nature and Plaintiff will suffer said injuries and losses in the future.

14.     As a direct and proximate result of the motor vehicle crash, the Plaintiff has met the threshold under Florida Statute section 627.737 (2), including, without limitation, suffering a permanent injury within a reasonable degree of medical probability.

15.     Plaintiff is entitled to recover underinsured motorist coverage under the Policy for injuries, damages or losses that have been suffered by the Plaintiff as a result of the above-described motor vehicle crash.

16.     Plaintiff has given AUTO-OWNERS timely notice of all claims covered under the underinsured motorist coverage of the Policy and has fulfilled all conditions precedent to recovery of underinsured motorist coverage under the Policy.

17.     AUTO-OWNERS has unjustifiably refused to honor its contractual obligations by

failing to pay the underinsured motorist benefits owed to Plaintiff.

18.     Due to AUTO-OWNERS' refusal to pay the underinsured motorist benefit in accordance with the terms of the Policy and Florida law, Plaintiff had to retain the services of the undersigned attorneys and contracted with them to represent her interests in connection with the Policy and this lawsuit, including the determination of coverage, liability, and damages under the Policy. By operation of law, including Florida Statute section 627.428, AUTO-OWNERS will be obligated to pay those fees upon the successful conclusion of Plaintiff's claim.

**WHEREFORE,** Plaintiff, DAWN BROGDEN, demands judgment against Defendant, AUTO-OWNERS INSURANCE COMPANY, for damages in excess of $15,000.00, attorneys' fees, costs of this action, interest, a trial by jury on all issues so triable, and any other relief this Court deems just and proper.

Dated this 27th day of February, 2017.

COKER, SCHICKEL, SORENSON,
POSGAY, CAMERLENGO & IRACKI,
P.A.

**DANIEL A. IRACKI, ESQUIRE**
Florida Bar No.: 0041212
**HOWARD C. COKER, ESQUIRE**
Florida Bar No.: 141540
**N. JOEL HARRIS, ESQUIRE**
Florida Bar No.: 0048975
**JANEEN M. KIRCH, ESQUIRE**
Florida Bar No.: 0041658
P.O. Box 1860 / 136 East Bay Street
Jacksonville, FL  32201-1860 / 32202
DAI@cokerlaw.com (Primary)
AJH@cokerlaw.com (Secondary)
LAM@cokerlaw.com (Secondary)
(904) 356-6071

(904) 353-2425 - facsimile
Attorneys for Plaintiff

Page 5 of 5

# *Auto-Owners*

**Page 1**

19020 (10-80)
Issued 12-10-2014

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

**AUTOMOBILE POLICY DECLARATIONS**

AGENCY THE HOLMES ORGANISATION INS & BONDS
12-0498-00          MKT TERR 123     (904) 645-3804

**Endorsement Effective 12-08-2014**

**POLICY NUMBER     49-706-461-00**

INSURED DUVAL LANDSCAPE SERVICES  LLC

**Company Use          78-04-FL-1401**

ADDRESS 8441 GLADE LN

JACKSONVILLE  FL  32217-4513

| Company Bill | POLICY TERM |
|---|---|
| | 12:01 a.m.          12:01 a.m. |
| | 01-16-2014   to   01-16-2015 |

This policy is amended in consideration of the additional or return premium shown below.  This Declarations voids and replaces all previously issued Declarations bearing the same policy number and premium term.

| DESCRIPTION OF ITEM INSURED | TERRITORY | CLASS |
|---|---|---|
| Comprehensive Liability | 017 Duval County, FL | SPL |

| COVERAGES | LIMITS | PREMIUM | CHANGE |
|---|---|---|---|
| Combined Liability | $1Million occurrence | $163.37 | |
| Florida Hurricane Catastrophe Fund Assessment | | 2.12 | |
| | TOTAL | $165.49 | No Charge |

Additional Forms For This Item:     79547  (02-11)     79539  (03-99)

ITEM DETAILS:  Estimated cost of hire - liability  $ If Any          (Subject to audit)
Florida Hurricane Catastrophe Fund assessment applies.
Rate Effective Date 08-31-2013

160                              0830

| 1. 1996 GMC  SIERRA C2500 VIN: 1GTGC29F7TE528053 | 017 Duval County, FL | 5CA |
|---|---|---|

| COVERAGES | LIMITS | PREMIUM | CHANGE |
|---|---|---|---|
| Combined Liability | $1Million occurrence | $1,268.01 | |
| Uninsured Motorist | $1Million person/$1Million occurrence | 205.19 | |
| Medical Payments | $  5,000 person | 10.99 | |
| Personal Injury Protection | Medical and Disability - $10,000 person  Medical limited to $2,500 non-emergency  Death Benefits - $5,000 person | 46.59 | |
| Florida Hurricane Catastrophe Fund Assessment | | 19.90 | |
| | TOTAL | $1,550.68 | No Charge |

Interested Parties:  None

Additional Forms For This Item:     89366  (06-13)     79308  (01-08)     89358  (01-13)
79539  (03-99)

ITEM DETAILS:  Radius of operation - within a 100 mile radius.
USE CLASS (00380): Landscape Gardening.
A 5% discount has been applied to automobiles used in contracting business.
Florida Hurricane Catastrophe Fund assessment applies.
Non-stacked Uninsured Motorist Coverage selected.
Rate Effective Date 08-31-2013

160              0018751    0830



PLAINTIFF'S EXHIBIT

A

**Page 2**

19020 (10-80)
Issued 12-10-2014

**AUTO-OWNERS INS. CO.**

AGENCY **THE HOLMES ORGANISATION INS & BONDS**
12-0498-00        MKT TERR 123

Company **POLICY NUMBER**  49-706-461-00
Bill  Company Use        78-04-FL-1401

INSURED **DUVAL LANDSCAPE SERVICES   LLC**

Term 01-16-2014 to  01-16-2015

---

**2. 2007 POLARIS/ VICTORY NESS**
**VIN: 5VPBC26D173005286**

017
Duval County, FL

| COVERAGES | LIMITS | PREMIUM | CHANGE |
|---|---|---|---|
| Combined Liability | $1Million  occurrence | $302.47 | |
| Uninsured Motorist | $1Million  person/$1Million  occurrence | 381.01 | |
| Medical Payments | $    1,000  person | 55.51 | |
| Florida Hurricane | | | |
| Catastrophe Fund | | | |
| Assessment | | 9.61 | |
| | TOTAL | $748.60 | |
| | | | No Charge |

**Interested Parties:   None**

**Additional Forms For This Item:**   79308  (01-08)      89358  (01-13)      79539  (03-99)
89021  (02-06)

ITEM DETAILS:  Automobile driven for pleasure use by a  49 year old operator.
Florida Hurricane Catastrophe Fund assessment applies.
Non-stacked Uninsured Motorist Coverage selected.
Stated Amount (SA) - See Important Notice 79177 (07-06).
Rate Effective Date 06-08-2013
Cycle is 1151cc and over

160                0830

---

**3. 2014 FORD F150**                                          017        5CA
**VIN: 1FTFW1ET9EFB82190**                    Duval County, FL

| COVERAGES | LIMITS | PREMIUM | CHANGE |
|---|---|---|---|
| Combined Liability | $1Million  occurrence | $1,477.43 | |
| Uninsured Motorist | $1Million  person/$1Million  occurrence | 205.19 | |
| Medical Payments | $    5,000  person | 10.99 | |
| Personal Injury | Medical and Disability - $10,000 person | 46.59 | |
| Protection | Medical limited to $2,500 non-emergency | | |
| | Death Benefits - $5,000 person | | |
| Comprehensive | Actual Cash Value - $ 500 deductible | 152.07 | |
| Collision | Actual Cash Value - $ 500 deductible | 246.86 | |
| Florida Hurricane | | | |
| Catastrophe Fund | | | |
| Assessment | | 27.81 | |
| | TOTAL | $2,166.94 | |
| | | | No Charge |

**Interested Parties:   None**

**Additional Forms For This Item:**   89366  (06-13)      79308  (01-08)      89358  (01-13)
79539  (03-99)    79939  (03-05)    89023  (07-06)    79203  (06-13)

ITEM DETAILS:  Radius of operation - within a 100 mile radius.
USE CLASS (00380): Landscape Gardening.
A 5% discount has been applied to automobiles used in contracting business.
Florida Hurricane Catastrophe Fund assessment applies.
Non-stacked Uninsured Motorist Coverage selected.
Rate Effective Date 08-31-2013

160            0033001    0830

# Auto-Owners

**Page 3**

19020 (10-80)
Issued 12-10-2014

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

**AUTOMOBILE POLICY DECLARATIONS**

AGENCY **THE HOLMES ORGANISATION INS & BONDS**
12-0498-00          MKT TERR 123     (904) 645-3804

**Endorsement Effective 12-08-2014**

INSURED **DUVAL LANDSCAPE SERVICES   LLC**

**POLICY NUMBER        49-706-461-00**

**Company Use        78-04-FL-1401**

ADDRESS 8441 GLADE LN

       JACKSONVILLE  FL  32217-4513

| Company Bill | POLICY TERM | |
|---|---|---|
| | 12:01 a.m. | 12:01 a.m. |
| | to | |
| | 01-16-2014 | 01-16-2015 |

This policy is amended in consideration of the additional or return premium shown below.  This Declarations voids and replaces all previously Issued Declarations bearing the same policy number and premium term.

| DESCRIPTION OF ITEM INSURED | TERRITORY | CLASS |
|---|---|---|
| 4. 2002 CHEV SILVERADO C2500HD | 017 | 5CA |
| VIN: 1GCHC23U62F101368 | Duval County, FL | |
| Item Added | | |

| COVERAGES | LIMITS | PREMIUM | CHANGE |
|---|---|---|---|
| Combined Liability | $1Million occurrence | $1,330.84 | $142.40 |
| Uninsured Motorist | $1Million person/$1Million occurrence | | |
| Medical Payments | $  5,000 person | 205.19 | 21.96 |
| Personal Injury | Medical and Disability - $10,000 person | 10.99 | 1.18 |
| Protection | Medical limited to $2,500 non-emergency | 46.59 | 4.99 |
| | Death Benefits - $5,000 person | | |
| Florida Hurricane | | | |
| Catastrophe Fund | | | |
| Assessment | | 20.72 | 2.22 |

|  | TOTAL | |
|---|---|---|
| | $1,614.33 | $172.75 |
| | | Additional |

Interested Parties:  None

Additional Forms For This Item:     89366  (06-13)     79308  (01-08)     89358  (01-13)
79539  (03-99)

ITEM DETAILS:  Radius of operation - within a 100 mile radius.
USE CLASS (00380): Landscape Gardening.
A 5% discount has been applied to automobiles used in contracting business.
Florida Hurricane Catastrophe Fund assessment applies.
Non-stacked Uninsured Motorist Coverage selected.
Rate Effective Date 08-31-2013

160          0026001    0830

**Page 4**

AUTO-OWNERS INS. CO.

19020 (10-80)
Issued 12-10-2014

| AGENCY | THE HOLMES ORGANISATION INS & BONDS | | | |
|---|---|---|---|---|
| | 12-0498-00 | MKT TERR 123 | | |

Company POLICY NUMBER   49-706-461-00
Bill    Company Use    78-04-FL-1401

INSURED DUVAL LANDSCAPE SERVICES  LLC

Term 01-16-2014 to  01-16-2015

| | TERM | ALL ITEMS |
|---|---|---|
| TOTAL POLICY PREMIUM | $6,246.04 | $172.75 |
| (THIS IS NOT A BILL) | | Additional |

The Paid In Full Discount does not apply to fixed fees or statutory charges.

Your policy qualifies for the Paid In Full Discount if you choose to pay your premium in full. The Paid In Full Discount amount may change as a result of policy changes. These changes will be reflected in a future invoice.

Forms That Apply To All Items:  79001  (03-99)   79200  (06-92)   79517  (01-07)
79524  (06-92)   79540  (03-99)   79550  (06-92)   79706  (03-12)   79419  (03-99)
89058  (04-07)   89368  (03-11)

Policy Rate Code 0000
A 12% Cumulative Multi-Policy Discount applies.  Supporting policies are marked with an (X):
Comm Umb(X) Comm Prop/Comm Liab(X) WC( ) Life( ) Personal( ) Farm( ).
A Merit Rating Plan Factor of 1.00 Applies.

Countersigned By: _____

# *Auto-Owners*

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

Issued 12-10-2014

AGENCY THE HOLMES ORGANISATION INS & BONDS
    12-0498-00      MKT TERR 123   (904) 645-3804

INSURED DUVAL LANDSCAPE SERVICES  LLC

ADDRESS 8441 GLADE LN

      JACKSONVILLE  FL  32217-4513

Endorsement Effective 12-08-2014

POLICY NUMBER    49-706-461-00

Company Use    78-04-FL-1401

| Company Bill | POLICY TERM | |
|---|---|---|
| | 12:01 a.m. | 12:01 a.m. |
| | | to |
| | 01-16-2014 | 01-16-2015 |

---

### AUTOMOBILE POLICY
### DESCRIPTION OF CHANGES EFFECTIVE 12-08-2014
### (See Declarations Attached)

ADDED    ITEM 0004: 2002 CHEV SILVERADO C2500HD

| | TERM | ALL ITEMS |
|---|---|---|
| TOTAL POLICY PREMIUM | $6,246.04 | $172.75 |
| (THIS IS NOT A BILL) | | Additional |

Agency Code  12-0498-00

Policy Number  49-706-461-00

1938 (1-13)

# OPTION TO MODIFY PERSONAL INJURY PROTECTION BENEFITS

For Personal Injury Protection insurance, the named insured may elect a deductible and to exclude coverage for loss of gross income and loss of earning capacity ("lost wages"). These elections apply to the named insured alone, or to the named insured and all dependent resident relatives. A premium reduction will result from these elections. The named insured is hereby advised not to elect the lost wage exclusion if the named insured or dependent resident relatives are employed, since lost wages will not be payable in the event of an accident.

*If this is an existing or renewal policy, the option you previously selected for Personal Injury Protection will continue to apply, unless you make a different selection below.*

Please review carefully and indicate your selection(s) under one of the following options, if desired:

**Option 1:**

Standard Personal Injury Protection Benefits
Total Aggregate Limit for all Personal
 Injury Protection Benefits, except Death Benefits
  Medical Expenses


  Work Loss
  Replacement Services Expenses
Death Benefits

Limit Per Person
$10,000 (medical expenses limited to $2,500 non-emergency)

80% of medical expenses subject to the Florida Motor Vehicle
 No-Fault Statute's fee schedule and subject to the total
  aggregate limit for Personal Injury Protection Benefits
60% of work loss subject to the total aggregate limit
 subject to the total aggregate limit
$5,000

☐  Select deductible of   ☐ $250   ☐ $500   ☐ $1000 to apply to Personal Injury Protection Benefits for:

☐ Named Insured Only
☐ Named Insured and All Dependent Resident Relatives

☐  Exclude loss of gross income and loss of earning capacity ("lost wages"):

☐ Named Insured Only
☐ Named Insured and All Dependent Resident Relatives

**Option 2:**

Extended Personal Injury Protection Benefits
Total Aggregate Limit for all Personal
 Injury Protection Benefits, except Death Benefits
  Medical Expenses


  Work Loss
  Replacement Services Expenses
Death Benefits

Limit Per Person
$10,000 (medical expenses limited to $2,500 non-emergency)

100% of medical expenses subject to the Florida Motor Vehicle
 No-Fault Statute's fee schedule and subject to the total
  aggregate limit for Personal Injury Protection Benefits
80% of work loss subject to the total aggregate limit
 subject to the total aggregate limit
$5,000

☐  Select Extended Personal Injury Protection coverage. **No deductible options are available.**

☐  Exclude loss of gross income and loss of earning capacity ("lost wages"). **Excluded "lost wages" must apply to named insured and all dependent resident relatives.**

_____
Signature

_____
Date

Policy Number:    49-706-461-00

Agency:   12-0498-00       THE HOLMES ORGANISATION INS & BONDS

1938 (1-13)

Page 1 of 1

# *Automobile Insurance Policy*

*Auto-Owners Insurance Company*

## POLICY NON-ASSESSABLE

This policy is non-assessable. Subject to the provisions of General Condition 2. CHANGES and any audit provisions of any coverage provided, the premium stated in the Declarations is the only premium you will be asked to pay.

## PARTICIPATING

You will be entitled to an equitable participation in Company funds in excess of the amount required to pay expenses and all the losses or claims or other policy obligations incurred, together with the reserve and surplus funds required or permitted by law. A distribution will be made only in accordance with the decision of our Board of Directors acting under the insurance laws and under our charter.

## NOTICE OF MEMBERSHIP AND ANNUAL MEETING

Because we are a mutual company this policy makes you a member of the Auto-Owners Insurance Company. You are entitled to vote, in person or by proxy, at all meetings. Our annual policyholder's meetings are held at our home office at Lansing, Michigan on the second Monday in May in each year at 10:00 A.M.

In witness whereof, we, the Auto-Owners Insurance Company, have caused this policy to be issued and to be duly signed by our President and Secretary.

Secretary

President

78023 (9-94)

19379 (1-09)

# FLORIDA DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES
## REINSTATEMENT FEES

Dear Policyholder:

In the event this policy is canceled or nonrenewed, Florida law requires us to report the action to the Florida Department of Highway Safety and Motor Vehicles within 45 days of the effective date of the cancellation or nonrenewal. Failure to maintain personal injury protection coverage and property damage liability coverage on a motor vehicle when required by law may result in loss of Florida registration and driving privileges.

The Florida Department of Highway Safety and Motor Vehicles may assess nonrefundable reinstatement fees of $150 for the first reinstatement, $250 for the second reinstatement and $500 for each subsequent reinstatement in a three year period. If you do not have a second reinstatement within three years after the initial reinstatement, the reinstatement fee will be $150 for the first reinstatement after that 3 year period.

This notice is for informational purposes only.

If you have any questions regarding your policy or this notice, please contact your Auto-Owners agency.

# AVAILABILITY OF RISK MANAGEMENT PLAN - FLORIDA

55081 (8-88)

The Florida Tort Reform and Insurance Act of 1986 requires insurance companies to make available to commercial casualty and commercial property policyholders guidelines for risk management plans.

Risk management guidelines include the following:

A.   Safety measures, including, as applicable, the following areas:

1.   Accidental occurrences;
2.   Fire hazards and fire prevention and detection;
3.   Liability for acts from the course of business;
4.   Slip and fall hazards; and
5.   Product injury.

B.   Training to insureds in safety management techniques.

C.   Safety management counseling services.

Risk Management Plan guidelines are available at your request.  If you desire this service, please contact your agent for assistance in completing the request.

69121 (1-13)

# POLICYHOLDER NOTICE

# USE OF MEDICAL FEE SCHEDULE FOR PERSONAL INJURY PROTECTION CLAIMS

We will limit reimbursement of medical expenses under Personal Injury Protection coverage to 80 percent of the following schedule of maximum charges specified in the Florida Motor Vehicle No-Fault Law, section 627.736, Florida Statutes:

a. For emergency transport and treatment by providers licensed under chapter 401, Florida Statutes, 200 percent of Medicare.

b. For emergency services and care provided by a hospital licensed under chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.

c. For emergency services and care as defined by s. 395.002, Florida Statutes, provided in a facility licensed under chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

d. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

e. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

f. For all other medical services, supplies, and care, 200 percent of the allowable amount under:
  1. The participating physicians fee schedule of Medicare Part B, except as provided in 2. and 3. below.
  2. Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.
  3. The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

  However, if such services, supplies, or care is not reimbursable under Medicare Part B, as provided in f. above, we will limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation will not be reimbursed by us.

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

If you have elected Extended Personal Injury Protection, as shown in the Declarations, we will limit reimbursement for medical benefits to 100 percent of the schedule of maximum charges set forth by the above described fee schedule for the named insured and resident relatives and 80 percent of the schedule of maximum charges set forth by the above described fee schedule for persons other than the named insured or resident relatives.

Your policy contains the terms and conditions of this coverage. Should you have any questions about this or other issues related to your policy, please contact your agent for assistance.

79001 (3-99)

This policy is a legal contract between you and us. Your policy includes the Declarations, any listed forms and any form issued to endorse the policy. The policy contains all agreements existing between you and us or any of our agents.

**READ YOUR POLICY CAREFULLY.** This cover sheet provides only a brief outline of some of the important features of your policy. The policy itself sets forth, in detail, the rights and obligations of both you and your insurance company. **IT IS THEREFORE IMPORTANT THAT YOU READ YOUR POLICY.**

## A QUICK GUIDE TO YOUR POLICY

The DECLARATIONS contain:
YOUR NAME
POLICY TERM
YOUR AUTOMOBILE
COVERAGES
LIMITS OF LIABILITY
ENDORSEMENTS THAT APPLY

| YOU WILL FIND | ON PAGE |
|---|---|
| INSURING AGREEMENT | 1 |
| SECTION I - DEFINITIONS | 1 |
| SECTION II - LIABILITY COVERAGE | 2 |
|   1. COVERAGE | 2 |
|   2. EXCLUSIONS | 3 |
|   3. COVERAGE EXTENSIONS | 5 |
|   4. LIMIT OF LIABILITY | 5 |
|   5. FINANCIAL RESPONSIBILITY AND COMPULSORY INSURANCE LAWS | 6 |
|   6. OTHER INSURANCE | 6 |
| SECTION III - DAMAGE TO YOUR AUTOMOBILE | 6 |
|   1. COVERAGES | 6 |
|   2. EXCLUSIONS | 8 |
|   3. COVERAGE EXTENSIONS | 9 |
|   4. LIMIT OF LIABILITY | 10 |
| SECTION IV - INDIVIDUAL NAMED INSURED | 11 |
|   1. LIABILITY COVERAGE | 11 |
|   2. DAMAGE TO YOUR AUTOMOBILE | 11 |
| SECTION V - WHAT YOU MUST DO AFTER AN ACCIDENT OR LOSS | 11 |
|   1. NOTIFY US PROMPTLY | 11 |
|   2. ASSIST AND COOPERATE | 12 |
|   3. PRESERVE OUR RIGHT TO RECOVER PAYMENTS | 12 |
| SECTION VI - GENERAL CONDITIONS | 12 |
|   1. POLICY PERIOD AND TERRITORY | 12 |
|   2. CHANGES | 12 |
|   3. FRAUD | 13 |
|   4. LEGAL ACTION AGAINST US | 13 |
|   5. SEVERABILITY | 13 |
|   6. DUPLICATION OF COVERAGE | 13 |
|   7. ASSIGNMENT | 13 |

# INSURING AGREEMENT

The attached Declarations describe the **automobile(s) we** insure and the Coverages and Limits of Liability for which **you** have paid a premium. **We** agree to insure the described **automobile(s)** for those Coverages and Limits of Liability subject to the terms and conditions of this policy. In return **you** must pay the premium and comply with all the terms and conditions of this policy.

## SECTION I - DEFINITIONS

To understand this policy, **you** must understand the meaning of the following words. These words appear in **bold face type** whenever used in this policy and endorsements attached to this policy.

1. **Automobile** means a **private passenger automobile**, a truck, truck tractor, **trailer, farm implement** or other land motor vehicle.

2. **Bodily Injury** means physical injury, sickness or disease sustained by a person including resulting death of that person.

3. **Equipment** means an apparatus or device permanently attached to or installed in **your automobile. Equipment** includes an apparatus or device specifically for use with **your automobile.**

4. **Farm implement** means motorized self-propelled farm machinery.

5. **Insured contract** means:

   a. a lease of premises;

   b. a sidetrack agreement;

   c. an easement or license agreement in connection with vehicle or pedestrian private railroad crossings at grade;

   d. any other easement agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   e. an indemnification of a municipality as required by ordinance, except in connection with work for a municipality; or

   f. that part of any other contract or agreement. pertaining to **your** business under which **you** assume the tort liability of another to pay damages because of **bodily injury** or **property damage** to a third person or organization, if the contract or agreement is made before the **bodily injury** or **property damage** occurs. Tort

liability means liability that would be imposed by law in the absence of any contract or agreement.

An **insured contract** does not include that part of any contract or agreement:

   a. that pertains to the loan, lease or rental of an **automobile** to **you;** or

   b. that holds a person or organization engaged in the business of transporting property for hire harmless for **your** use of **your automobile** over a route or territory that person or organization is authorized to serve by public authority.

6. **Occurrence** means an accident that results in **bodily injury** or **property damage** and includes, as one **occurrence**, all continuous or repeated exposure to substantially the same generally harmful conditions.

7. **Private passenger automobile** means:

   a. a passenger or station wagon type **automobile** with four or more wheels;

   b. pickup or van type **automobile** with a gross weight of 15,000 pounds or less which is not used in the business of carrying passengers for hire; or

   c. a motorhome.

8. **Property damage** means damage to or destruction of tangible property including resulting loss of use of that property.

9. **Relative** means a person who resides with **you** and who is related to **you** by blood, marriage or

1

adoption. **Relative** includes a ward or foster child who resides with **you**.

10. **Suit** means a civil court proceeding in which damages because of **bodily injury** or **property damage** to which this insurance applies are alleged.

11. **Trailer** means a vehicle which is designed to be connected to and towed by an **automobile**.

12. **You** or **your** means the first named **insured** shown in the Declarations and if an individual, **your** spouse who resides in the same household.

13. **Your automobile** means the **automobile** described in the Declarations.

14. **We, us** or **our** means the Company providing this insurance.

# SECTION II - LIABILITY COVERAGE

1. **COVERAGE**

   a. **Liability Coverage - Bodily Injury and Property Damage**

   We will pay damages for **bodily injury** and **property damage** for which **you** become legally responsible because of or arising out of the ownership, maintenance or use of **your automobile** (that is not a **trailer**) as an **automobile**. We will pay such damages:

   (1) on **your** behalf;

   (2) on behalf of any **relative** using **your automobile** (that is not a **trailer**);

   (3) on behalf of any person using **your automobile** (that is not a **trailer**) with **your** permission or that of a **relative**; and

   (4) on behalf of any person or organization legally responsible for the use of **your automobile** (that is not a **trailer**) when used by **you**, a **relative**, or with **your** permission or that of a **relative**.

   We will settle or defend, as **we** consider appropriate, any claim or **suit** for damages covered by this policy. **We** will do this at **our** expense, using attorneys of **our** choice. This agreement to settle or defend claims or **suits** ends when **we** have paid the limit of **our** liability.

   b. **Trailers**

   (1) The Liability Coverage provided by this policy for **your automobile** (that is not a **trailer**) or provided for any other **automobile** (that is not a **trailer**) extends:

      (a) to any **trailer** connected to or accidentally disconnected from such **automobile**. This coverage includes the **trailer** owner.

      (b) to any non-motorized farm machine or farm wagon while connected to or accidentally disconnected from such **automobile**. This coverage includes the non-motorized farm machine or farm wagon owner. No coverage applies to the operation or to the loading or unloading of the non-motorized farm machine or the farm wagon.

   (2) The Liability Coverage provided by this policy for **your automobile** (that is not a **trailer**) also extends to any **trailer** not maintained or used for commercial purposes:

      (a) which is owned by **you**.

      (b) which is owned by a **relative** who also owns an **automobile** (that is not a **trailer**) scheduled in the Declarations.

      (c) which is owned by a **relative** who does not own an **automobile** other than the **trailer**.

      (d) which is not owned by an individual described in (a), (b) or (c) above while

2

the trailer is in the care, custody or control of such individual.

Coverage is extended only when such **trailer:**

(a) is not connected to an **automobile**. This coverage applies to only **your** liability or **your relative's** liability arising from the ownership or use of the **trailer.**

(b) is connected to an **automobile** (that is not a **trailer**) for which Liability Coverage is not provided by this policy. This coverage applies to only **your** liability or **your relative's** liability arising from use of the **trailer** by a person or organization other than **you** or **your relative**. No coverage applies to the owner or operator of the **automobile** or to the owner of a **trailer** described in (d) above.

**c. Other Automobiles Covered**

The Liability Coverage provided for **your automobile** also applies to certain other **automobiles**. It applies:

(1) to an **automobile you** do not own which is temporarily used as a substitute for **your automobile**. **Your automobile** must be out of use because of breakdown, repair, servicing, loss or destruction. The owner of the substitute **automobile** is not covered.

(2) to an **automobile** of the same type which **you** acquire after the inception date of the current policy term if:

(a) it replaces **your automobile**. **You** must report the replacement **automobile** to **us** no later than the expiration date of the policy term during which the **automobile** was acquired; or

(b) it is an additional **automobile** and **we** insure all automobiles you already own provided **you:**

1) report the additional **automobiles** to **us** within 30 days of delivery; and

2) pay any required additional premiums.

This extension does not apply if **you** have other liability insurance that applies to the **automobile you** acquire.

**2. EXCLUSIONS**

Liability Coverage does not apply:

a. to any person for **bodily injury** or **property damage** arising out of or resulting from an intentional act of that person.

b. to any person operating or employed by an **automobile** garage, repair shop, sales agency, service station or public parking place. This exclusion does not apply to:

(1) **you;**

(2) a **relative;** or

(3) any person associated with or employed by **you;**

while using **your automobile** in such business.

c. to any **automobile** while used as a public or livery conveyance. This exclusion does not apply to car pooling on a share the expense basis.

d. to any **automobile** while:

(1) preparing for;

(2) practicing for; or

(3) participating in;

any prearranged racing, speed or demolition contest.

3

e. to any person or organization with respect to the loading or unloading of **your automobile**. We will cover **you** or **your** employee or a lessee or borrower of **your automobile** or that person's employee.

f. to any person or organization (or that person's or organization's agents, employees or contractors) subject to the security requirements of any motor carrier law or regulation because of transporting property for **you** or for others. This exclusion does not apply to **you**.

g. to liability which is assumed under any contract or agreement. This exclusion does not apply to such liability for damages that **you**:

    (1) assumed under a contract or agreement that is an **insured contract**;

    (2) would have in the absence of a contract or agreement; or

    (3) assumed in a **private passenger automobile** lease or rental agreement, provided **you** are an individual.

h. to any person or organization for damage to property that person or organization is transporting. This exclusion does not apply to liability **you** have assumed under a sidetrack agreement.

i. to any person or organization for damage to property or an **automobile** owned by, rented to or in the care, custody or control of that person or organization.

j. to any expenses that would be payable under any workers compensation law, unemployment compensation or disability benefits law or under any similar law.

k. to any person not employed by **you** for **bodily injury** to an employee who is injured on the job except:

    (1) **bodily injury** to a domestic employee when workers compensation benefits are not required or available; or

    (2) when such liability is assumed by **you** under an **insured contract**.

l. to **your** employee for claims brought against him or her by another of **your** employees injured on the job.

m. to any person or organization for **bodily injury** to:

    (1) an employee of that person or organization; or

    (2) a spouse, child, parent, brother or sister of the employee which results from the injury to the employee;

when that injury arises out of and in the course of employment by that person or organization. This exclusion applies:

    (1) whether a claim is made against such person or organization as employer or otherwise; and

    (2) to any obligation to share damages with or repay another who must pay damages because of the injury.

This exclusion does not apply to liability **you** have assumed under an **insured contract**.

n. to **bodily injury** or **property damage** for which insurance is available under any nuclear energy liability policy. This exclusion applies even if the nuclear energy liability policy limits of liability are exhausted.

o. to **bodily injury** or **property damage** for which financial responsibility or liability insurance is required to be maintained under the Atomic Energy Act of 1954, as amended, or for which governmental indemnity is available.

p. to liability for **bodily injury** or **property damage** caused by war, whether declared or not declared, insurrection or any of their consequences whether or not assumed under a contract or agreement.

3. **COVERAGE EXTENSIONS**

4

In addition to **our** limit of liability, **we** will also pay:

**a.** premiums on appeal bonds in any **suit we** defend. **We** will not apply for or furnish such bonds.

**b.** premiums on bonds to release attachments, but only for bond amounts that do not exceed the applicable limit of liability. **We** will not apply for or furnish such bonds.

**c.** premiums on bail bonds required because of an accident or related traffic law violation, involving **your automobile** during the policy period. **We** will not apply for or furnish such bonds. **Our** maximum payment is $250 per **occurrence**.

**d.** interest on damages owed by **you** because of a judgment in a **suit we** defend and accruing:

(1) after the judgment, and until **we** pay, offer or deposit in court, the amount for which **we** are liable under this policy; or

(2) before the judgment, where owed by law, but only on that part of the judgment **we** pay.

**e.** expenses **you**, a **relative** or a person using **your automobile** with **your** permission, incur for first aid to others at the time of an **occurrence** covered by this policy.

**f.** all costs charged against **you** in a **suit we** defend and all reasonable expenses incurred at **our** request including actual loss of earnings up to $100 per day.

## 4. LIMIT OF LIABILITY

**We** will pay damages for **bodily injury** or **property damage** up to the limit of liability stated in the Declarations for this coverage. Such damages shall be paid as follows:

**a.** For **bodily injury**:

(1) The limit stated for "each person" is the amount of coverage and the most **we** will pay for all damages because of or arising out of **bodily injury** to one person in any one **occurrence**.

(2) The limit stated for "each occurrence" is the total amount of coverage and the most **we** will pay, subject to a.(1) above, for all damages because of or arising out of **bodily injury** to two or more persons in any one **occurrence**.

**b.** For **property damage**, the limit stated is the amount of coverage and most **we** will pay for all **property damage** in any one **occurrence**.

**c.** The limit of liability applicable to a **trailer**, non-motorized farm machine or farm wagon which is connected to an **automobile** covered by this policy shall be the limit of liability applicable to such **automobile**. The **automobile** and connected **trailer**, non-motorized farm machine or farm wagon are considered one **automobile** and do not increase the limit of liability.

**d.** The limit of liability applicable to a **trailer** covered by this policy:

(1) which is not connected to an **automobile**; or

(2) which is connected to an **automobile** not covered by this policy;

shall be the limit of liability applicable to **your automobile**. If this policy covers more than one of **your automobiles**, the highest limit of liability applicable to any one such **automobile** shall apply.

**e.** The limit of liability for this coverage may not be added to the limits for the same or similar coverage applying to other **automobiles insured** by this policy to determine the amount of coverage available for any one **occurrence** regardless of the number of:

(1) **automobiles** shown in the Declarations;

(2) premiums charged in the Declarations or premiums paid;

(3) claims presented or suits brought;

(4) persons injured; or

(5) automobiles involved in the occurrence.

## 5. FINANCIAL RESPONSIBILITY AND COMPULSORY INSURANCE LAWS

While **your automobile** is subject to laws of another state or Canada, **we** will:

a. increase the Limit of Liability for Liability Coverage to comply with the minimum requirements of a financial responsibility or compulsory insurance law of the jurisdiction where **your automobile** is being operated; and

b. afford the minimum amounts for the types of mandatory coverages required by the jurisdiction where **your automobile** is being operated.

This provision does not apply to any limits required by any law governing motor carriers of property or passengers.

**We** will not duplicate payments available under this or any other insurance for the same elements of loss.

## 6. OTHER INSURANCE

Except as stated below, the Liability Coverage provided by this policy for **your automobile** shall be primary and with regard to any other **automobile** to which it applies, coverage shall be excess of any other applicable **automobile** liability insurance.

a. When this insurance is primary and there is other **automobile** liability insurance which is stated to be applicable on an excess or contingent basis, **our** liability shall not be reduced by the existence of such insurance.

b. When both this insurance and other insurance apply on the same basis, whether primary, excess or contingent, **we** shall be liable for only **our** share. **Our** share shall be the ratio of the amount of this insurance to the total amount of all collectible **automobile** liability insurance.

c. Subject to a. and b. above, this coverage shall be primary when any **trailer** is connected to **your automobile** (that is not a **trailer**).

d. Subject to b. above, this coverage shall be excess when any **trailer** is connected to an **automobile** (that is not a **trailer**), except **your automobile** (that is not a **trailer**).

# SECTION III - DAMAGE TO YOUR AUTOMOBILE

## 1. COVERAGES

### a. Fire Coverage

**We** will pay for loss of or damage to **your automobile** and its equipment caused by:

(1) fire or lightning.

(2) smoke or smudge because of a sudden, unusual or faulty operation of any fixed heating equipment where **your automobile** is stored.

(3) windstorm, hail, earthquake, explosion, external discharge or leakage of water.

**We** cover damage resulting from the stranding, sinking, burning, collision or derailment of any equipment being used to transport **your automobile** on land or water. **We** will also pay for general average and salvage charges for which **you** may be legally responsible.

### b. Theft Coverage

**We** will pay for loss of or damage to **your automobile** and its **equipment** caused by theft, larceny, robbery or pilferage. **We** cover **your** loss when **you** are tricked into giving **your automobile** to another person.

6

**c.  Comprehensive Coverage**

We will pay for loss of or damage to **your automobile** and its equipment from any cause except upset or collision with another object or with a vehicle to which it is attached.

We will also pay for:

**(1)** glass breakage from any cause including upset or collision;

**(2)** damage caused by missiles or falling objects; and

**(3)** damage caused by collision with an animal or bird.

When a deductible is indicated in the Declarations for this coverage, we will reduce **our** payment by that amount.

**d.  Collision Coverage**

We will pay for loss or damage to **your automobile** and its equipment caused by accidental collision with another object or by accidental upset.

When a deductible is indicated in the Declarations for this coverage, we will reduce **our** payment by that amount. If **your automobile** is a **private passenger automobile**, the deductible does not always apply. The deductible shall not apply:

**(1)** in a collision with another **automobile**:

    **(a)** we insure and which **you** do not own, rent or have in **your** care, custody or control; or

    **(b)** whose owner or operator has been identified; and

        **1)** is legally responsible for the entire amount of the damage; and

        **2)** is covered by a **property damage** liability policy or bond;

but only if the damage exceeds the deductible amount.

**(2)** to **your** legally parked **private passenger automobile** in the event it is accidentally struck by another of **your private passenger automobiles**, provided Collision Coverage applies to both such **automobiles**.

**e.  Road Trouble Service**

We will reimburse **you** up to the amount stated in the Declarations for this coverage in any one emergency:

**(1)** for towing **your automobile** to the nearest available garage; and

**(2)** for the cost of labor performed on **your automobile** at the place of the emergency.

**f.  Other Automobiles Covered**

The Damage To Your Automobile Coverages provided for **your automobile** also apply to certain other **automobiles**. They apply:

**(1)** to an **automobile you** do not own which is temporarily used as a substitute for **your automobile**. **Your automobile** must be out of use because of breakdown, repair, servicing, loss or destruction.

**(2)** to an **automobile** of the same type which **you** acquire after the inception date of the current policy term subject to the following:

    **(a)** If the **automobile** replaces **your automobile**, we will apply only those coverages that apply to the **automobile** being replaced. **You** must report the replacement **automobile** to **us** no later than the expiration date of the policy term during which the **automobile** was acquired.

    **(b)** If the **automobile** is an additional **automobile** and we insure all **automobiles you** already own, we will apply only those coverages which are com-

7

mon to all of **your automobiles** we in-
sure provided **you:**

   **1)** report the additional **automobile** to
   **us** within 30 days after **you** take
   possession; and

   **2)** pay any required additional pre-
   miums.

**You** may, at any time during the first
30 days after **you** take possession of
the **automobile,** purchase the broadest
coverages applicable to any one
**automobile** scheduled in the Declara-
tions.

These extensions do not apply when there is
other insurance covering **your** interest or the
interest of the owner. However, paragraph
f.(1) above applies if **you** are legally liable.

**2.** **EXCLUSIONS**

Fire, Theft, Comprehensive and Collision Cover-
ages do not apply to:

**a.** loss of or damage to **your automobile** because
of confiscation or destruction by any civil or
governmental authorities because of illegal
activities engaged in by:

   **(1)** **you;** or

   **(2)** a **relative.**

This exclusion does not apply to a loss
payee's interest in **your automobile.**

**b.** loss of or damage to **your automobile** because
of or arising out of **your** intentional act or an
intentional act committed at **your** direction or
with **your** knowledge. This exclusion does not
apply to a loss payee's interest in **your auto-
mobile.**

**c.** conversion, embezzlement or secretion by
any person lawfully having **your automobile**
under a sale, lease or similar agreement.

**d.** any **automobile** while:

   **(1)** preparing for;

   **(2)** practicing for; or

   **(3)** participating in;

any prearranged racing, speed or demolition
contest.

**e.** loss of use, except as provided in Coverage
Extensions.

**f.** wear and tear, freezing, mechanical or elec-
trical breakdown, other than burning of wiring,
unless this damage follows and results from
other loss or damage covered by this policy.

**g.** tires, unless the loss or damage is caused by:

   **(1)** fire;

   **(2)** theft; or

   **(3)** malicious mischief; or

is part of other damage covered by this policy.

**h.** a stereo tape or disc player:

   **(1)** that is not attached to **your automobile;**
   and

   **(2)** is not receiving its power from **your auto-
   mobile's** electrical system.

**i.** stereo tapes, cassettes, discs or cartridges or
related items.

**j.** any caddy, case or container designed for
storing or carrying stereo tapes, cassettes,
discs or cartridges.

**k.** unless described in the Declarations and a
premium charged:

   **(1)** a camper body; or

   **(2)** a pickup cover with built-in cooking and
   sleeping equipment.

8

l.  A citizens-band radio, mobile or cellular telephone, television or other similar device for sending or receiving communications, including related items.  However, these devices are covered if:

   (1)  standard or optional **equipment** from the manufacturer of **your automobile** for that make, model and model year;

   (2)  permanently installed in the dash or console opening designed for such **equipment**; or

   (3)  described in the Declarations and a premium charged.

m.  a radio, stereo, stereo tape deck, compact disc player or other similar device designed for the reproduction of sound, including related items.  However these devices are covered if:

   (1)  standard or optional **equipment** for the manufacturer of **your automobile** for that make, model and model year; or

   (2)  permanently installed in **your automobile**.

   **Our** liability under m.(2) above shall not exceed $1000 unless a greater amount is shown in the Declarations and a premium charged.

n.  Any device designed or used to detect or locate radar or any other speed measuring or calculating apparatus.

o.  radioactive contamination.

p.  loss caused by:

   (1)  declared or undeclared war or insurrection; or

   (2)  explosion of a nuclear weapon or its consequences.

3.  **COVERAGE EXTENSIONS**

   a.  **Trailers**

The Damage To Your Automobile Coverages provided to **your automobile** extend to certain **trailers you** do not own.  The **trailer** must:

   (1)  be designed for use with a **private passenger automobile;**

   (2)  used with **your private passenger automobile;** and

   (3)  be other than a **trailer** of the home, office, store, display, or passenger type.

   **Our** limit of liability for all loss and damage under this coverage extension is $500 in any one **occurrence**.

b.  **Loss Of Use By Theft**

   Under Theft Coverage or Comprehensive Coverage, we will reimburse **you** for transportation expenses if **your private passenger automobile** is stolen.  We will pay up to $20 per day but not more than $600 in one **occurrence**.  We will pay such expenses incurred beginning 48 hours after **you** report the theft to **us** and to the police and ending when **your automobile** is returned to use or **we** pay for its loss.

c.  **Transportation Cost**

   Under the coverages for Damage To Your Automobile **we** will reimburse **you** for expenses **you** incur for transportation from where **your automobile** was disabled to **your** home or intended destination.  The maximum payment is $25 for each **occurrence**.

d.  **Personal Property**

   If **your automobile** is a **private passenger automobile**, **we** will extend the Comprehensive Coverage and the Collision Coverage that apply to **your automobile** to loss of or damage to personal property contained in or on **your automobile**.  This coverage extension is subject to the following:

   (1)  The personal property must be owned by **you**, a **relative**, or **your** employee.

9

**(2)** Comprehensive Coverage is extended only for loss or damage because of:

**(a)** fire;
**(b)** lightning;
**(c)** theft or attempted theft.

Unless the entire **automobile** is stolen, there must be visible signs of someone breaking into the **automobile** for (2)(c) above to apply.

**(3)** This coverage extension does not apply to:

**(a)** stereo tapes, cassettes, discs or cartridges or related items.

**(b)** a citizens-band radio, mobile or cellular telephone, television or other similar device for sending or receiving communications, including related items.

**(c)** a radio, stereo, stereo tape deck, compact disc player or other similar device designed for the reproduction of sound, including related items.

**(d)** property used in a business, trade or profession.

**(e)** money or jewelry.

**(f)** any device designed or used to detect or locate radar or any other speed measuring or calculating apparatus.

**(g)** property specifically **insured**.

**(4)** **Our** limit of liability for all loss or damage under this coverage extension is $200 in any one **occurrence**.

**4. LIMIT OF LIABILITY**

**a.** **We** will pay no more than the lowest of the following:

**(1)** the actual cash value of stolen or damaged property;

**(2)** the necessary cost, at local prices, to repair or replace the property or damaged parts with material of similar kind and quality; or

**(3)** the Limit of Liability stated in the Declarations.

**b.** **We** will, at **our** option, replace **your automobile** with a new one of equal value or pay **you your** original purchase price if:

**(1)** **your automobile** is a **private passenger automobile**;

**(2)** **you** purchased it new;

**(3)** **we** determine the loss or damage can not be repaired; and

**(4)** the loss or damage occurs within 90 days of the purchase date.

**c.** **Your automobile** may have been altered, remodeled, converted or modified so that its value is substantially increased over that of a standard **automobile** of the same make and model. In that case, **we** will pay only a proportional share of any loss or damage. **We** will pay the proportion that the value of a standard **automobile** bears to the value of **your automobile**. This applies only when alteration, remodeling, conversion or modification affects the amount of the loss. It does not apply when an additional premium is charged based on the increased value.

**d.** If a loss can be paid under either Comprehensive or Collision Coverage, payment will be made under the coverage that pays **you** the most.

10

## SECTION IV - INDIVIDUAL NAMED INSURED

If the first named **insured** in the Declarations is an individual and the **automobile** described in the Declarations is a **private passenger automobile** the following extensions of coverage apply.

1. **LIABILITY COVERAGE - BODILY INJURY AND PROPERTY DAMAGE**

   a. The Liability Coverage provided for **your automobile** (that is not a **trailer**) also applies to an **automobile** (that is not a **trailer**) not:

      (1) owned by or furnished or available for regular use to **you** or anyone living with **you**. However, **we** will cover **your** liability for **your** use of an **automobile** (that is not a **trailer**) owned by or furnished for the regular use of a **relative**.

      (2) used in an **automobile** garage repair shop, sales agency, service station or public parking business **you** own or operate.

   b. **We** extend this coverage only:

      (1) to **you**;
      (2) to **relatives** who do not own an **automobile** (that is not a **trailer**); and
      (3) to anyone legally responsible for the use of the **automobile** (that is not a **trailer**) by the persons in (1) and (2) above.

   c. **We** do not cover:

      (1) the owner of the **automobile** (that is not a **trailer**).
      (2) an **automobile** used in **your** business or occupation or that of a **relative**, unless it is:
         (a) a **private passenger automobile**; and

      (b) used by **you**, such **relative** or the chauffeur or household employee of either.

      (3) **you** or a **relative** using an **automobile** (that is not a **trailer**) without a reasonable belief of permission to do so.

2. **DAMAGE TO YOUR AUTOMOBILE**

   a. The Damage to Your Automobile Coverages provided for **your automobile** also apply to an **automobile** not:

      (1) owned by or furnished or available for regular use to **you** or anyone living with **you**.
      (2) used in an **automobile** garage, repair shop, sales agency, service station or public parking business **you** own or operate.

   b. **We** extend this coverage only:

      (1) to **you**; and
      (2) to **relatives** who do not own an **automobile**.

   c. **We** do not cover an **automobile** used in **your** business or occupation or that of a **relative** unless it is:

      (1) a **private passenger automobile**; and
      (2) used by **you**, such **relative**, or the chauffeur or household employee of either.

   d. These extensions do not apply when there is other insurance covering **your** interest or the interest of the owner. However, they do apply if **you** are legally liable.

## SECTION V - WHAT YOU MUST DO AFTER AN ACCIDENT OR LOSS

1. **NOTIFY US PROMPTLY**

   a. **You** and any person seeking coverage under this policy must notify **us** promptly as to how, when and where the accident happened. **We**

11

must have the names and addresses of any injured person and of any witnesses. Notice and documentation of loss must be given if we require it. Any loss or damage caused by theft, larceny, robbery, pilferage or trickery must be promptly reported to the police.

b. If claim is made or **suit** is brought against **you** or any person entitled to coverage, **we** must be advised promptly. All papers in connection with claims or **suits** must be sent to **us** without delay.

c. Under Uninsured Motorist Coverage and/or Underinsured Motorist Coverage, any person making claim must:

(1) give **us** written notice and documentation of loss;

(2) submit to examinations by physicians **we** select as often as **we** require; and

(3) authorize **us** to obtain medical reports and other pertinent records.

**We** must be given copies of the legal papers if **suit** is brought against any person believed to be legally responsible.

2. **ASSIST AND COOPERATE**

a. **You** and any person seeking coverage under this policy must cooperate with **us** in the in-

vestigation, settlement or defense of any claim or **suit**. This includes submitting to a statement under oath and giving **us** access to any documents which **we** request.

b. When a claim is made for damage to **your automobile, you** must let **us** examine the vehicle before repairs are made or evidence of loss removed.

c. Following damage to **your automobile**, every reasonable effort must be made to protect the vehicle against further loss. **We** will pay the reasonable expenses incurred to do this.

3. **PRESERVE OUR RIGHT TO RECOVER PAYMENTS**

a. If **we** make a payment under this policy and the person to or for whom payment is made has a right to recover damages from another, **we** will be entitled to that right. That person shall do everything necessary to transfer that right to **us** and shall do nothing to prejudice it.

b. The person to or for whom payment is made under Uninsured Motorist Coverage and/or Underinsured Motorist Coverage must hold in trust for **us** his rights of recovery against any legally liable person. He must do all that is proper to secure such rights and must do nothing to prejudice them. He must take any required action in his name to recover damages and reimburse **us** out of any proceeds to the extent of **our** payment.

# SECTION VI - GENERAL CONDITIONS

1. **POLICY PERIOD AND TERRITORY**

This policy applies only to accidents and losses which happen during the policy period as shown in the Declarations. They must take place within the United States of America, its territories or possessions, Canada or Mexico or between their ports.

2. **CHANGES**

a. This policy contains all the agreements between **you** and **us** or any of **our** agents relating to this insurance. The terms of this policy

may not be changed except by written endorsement issued by **us**.

b. **We** may adjust **your** premium during the policy term because of changes in the factors that were used to determine such premium. These factors include but are not limited to:

(1) the principal place of garaging **your automobile**;

(2) coverages, limits of liability and deductibles;

12

**(3)** the type, make and model of **your automobile** and its use;

**(4)** the operators of **your automobile**.

Premium adjustments will be made at the time of such changes or when **we** become aware of the changes, if later. **We** will use the governing rules and rates in effect on the inception date of the policy term.

## 3. FRAUD

**We** will not cover any person seeking coverage under this policy who has made fraudulent statements or engaged in fraudulent conduct with respect to procurement of this policy or to any **occurrence** for which coverage is sought.

## 4. LEGAL ACTION AGAINST US

**a.** No legal action may be brought against **us** until there has been full compliance with all the terms of this policy. Further, under the Liability Coverage no legal action may be brought until **we** agree a person entitled to coverage has an obligation to pay or until the amount of that obligation has been determined by judgement after trial. No one has any right under this policy to bring **us** into any action to determine the liability of any person **we** have agreed to protect.

**b.** Bankruptcy or insolvency of any person **we** have agreed to protect will not relieve **us** of any obligation under the terms of this policy.

## 5. SEVERABILITY

Except as to **our** limit of liability, the coverage provided by this policy applies separately to each person against whom claim is made or **suit** is brought.

## 6. DUPLICATION OF COVERAGE

**a.** If this policy and any other policy or form of coverage provided by **us** or a company affiliated with **us**, provide coverage for the same loss or damage, **our** maximum limit of liability under all the policies or forms of coverage shall not exceed the highest limit of liability under any single policy or form of coverage applicable to the loss or damage.

**b.** This condition does not apply to any policy or form of coverage issued by **us** or a company affiliated with **us** to specifically provide excess insurance over this policy.

## 7. ASSIGNMENT

No interest in this policy may be assigned without **our** written consent. But, if **you** should die within the policy term, the policy will cover as though named in the Declarations:

**a.** **your** spouse, if **you** are an individual;

**b.** **your** legal representative but only with respect to his legal responsibility for the maintenance or use of **your automobile**; and

**c.** any person having proper temporary custody of **your automobile** until a legal representative is appointed;

provided **we** are given written notice of **your** death within 60 days. This requirement does not apply with regard to **your** spouse.

**Florida**                                                                79200 (8-92)
# MEDIATION OF PERSONAL INJURY AND PROPERTY DAMAGE CLAIMS
**Automobile**

It is agreed:

1. The following definitions apply to this endorsement:

   a. **Personal injury** means injury covered by the Personal Injury Protection, Automobile Medical Payments and Uninsured Motorist Coverages as provided by this policy.

   b. **Property damage** means physical damage to your automobile covered by the Fire, Theft, Comprehensive and Collision Coverages as provided by this policy.

2. With regard to any claim **you** file with **us** for **personal injury** in an amount of $10,000 or less or **property damage** in any amount arising out of the ownership, operation, use, or maintenance of an **automobile**, either party may demand mediation of the claim prior to instituting litigation.

3. A request for mediation shall:

   a. be filed with the Department of Insurance;

   b. state the reason for the request for mediation; and

   c. state the issues in dispute which are to be mediated.

4. The mediation shall be conducted as an informal process under rules of procedure for claims mediation as determined by the Department of Insurance.

5. Any participant in the mediation must have authority to make a binding decision. All participants must mediate in good faith.

6. The Department of Insurance shall randomly select mediators. Each party may once reject the mediator selected. This may be done either originally or after the opposing side has exercised its option to reject a mediator.

7. Only one mediation may be requested for each claim unless all parties agree to further mediation.

8. Upon receipt of a request for mediation, the Department of Insurance shall refer the request to a mediator.

9. The mediator shall notify the applicant for mediation, all interested parties as identified by the applicant, and any other parties the mediator believes may have an interest in the mediation, of the date, time and place of the mediation conference.

10. The mediation conference shall be held within 45 days after the request for mediation. The conference may be held by telephone if feasible.

11. Disclosures and information divulged in the mediation process shall not be admissible in any subsequent action or proceeding relating to the claim or cause of action giving rise to the claim.

12. No party shall be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

13. Costs of mediation shall be borne equally by both parties unless the mediator determines that one party has not mediated in good faith.

All other policy terms and conditions apply.

79308 (1-08)

**Florida**
# NONSTACKED UNINSURED MOTORIST COVERAGE
**Automobile Policy**

It is agreed:

## 1. DEFINITIONS

The following definitions apply in addition to those contained in **SECTION I - DEFINITIONS** of the policy.

a. **Occupying** means being in or on an **automobile** as a passenger or operator, or being engaged in the immediate acts of entering, boarding or alighting from an **automobile**.

b. **Uninsured automobile** means an **automobile**:

    **(1)** to which no **bodily injury** liability bond or liability insurance policy applies:

        **(a)** at the time of the **occurrence**; or

        **(b)** in at least the minimum limits of liability required by the Florida Financial Responsibility Law.

    **(2)** to which a **bodily injury** liability bond or liability insurance policy applies at the time of the **occurrence** with limits of liability less than the amount of damages the injured person is legally entitled to recover for **bodily injury**. Such **automobile** shall be considered an underinsured **automobile**.

    **(3)** insured by a company that becomes insolvent.

    **(4)** insured by a company that has issued a successful written denial of coverage.

    **(5)** that is a hit and run **automobile**. By this **we** mean an **automobile**:

        **(a)** that causes an accident resulting in the **bodily injury** sustained by the injured person; and

        **(b)** whose owner or operator is unidentified.

    The accident must be reported to the police within 24 hours. Failure to report the accident to the police within 24 hours may result in a loss in coverage if a judge or jury determines that **our** rights have been prejudiced by such failure.

    Actual physical contact is not required if the facts of the accident are proven. **We** will consider the testimony of a person making a claim under this coverage only if such testimony is corroborated by a witness other than the injured person, unless this provision is unenforceable as a matter of law.

**Uninsured automobile** does not include an **automobile**:

    **(1)** owned or leased by, furnished to or available for regular use of **you** or anyone living with **you** except an **automobile** insured for Liability Coverage by the policy when **we** exclude Liability Coverage to a nonfamily member whose operation of the **automobile** results in injuries to **you** or a **relative** who is a member of **your** household;

    **(2)** located for use as a residence or premises; or

Page 1 of 5

(3) that is designed for use primarily off public roads except while actually on public roads.

## 2. COVERAGE

a. We will pay compensatory damages, including but not limited to loss of consortium, any person is legally entitled to recover from the owner or operator of an **uninsured automobile** because of **bodily injury** sustained by an injured person while **occupying an automobile** that is covered by **SECTION II - LIABILITY COVERAGE** of the policy.

b. If the first named insured in the Declarations is an individual, this coverage is extended as follows:

  (1) **We** will pay compensatory damages, including but not limited to loss of consortium, **you** are legally entitled to recover from the owner or operator of any **uninsured automobile** because of **bodily injury you** sustain:

    (a) when **you** are not **occupying** an **automobile**; or

    (b) when **occupying an automobile you** do not own which is not insured by **SECTION II - LIABILITY COVERAGE** of the policy.

  (2) The coverage extended in **2.b.(1)** above is also afforded to a **relative** who does not own an **automobile**.

c. The **bodily injury** must be accidental and arise out of the ownership, maintenance or use of the **uninsured automobile**.

d. Whether an injured person is legally entitled to recover damages and the amount of the damages shall be determined by agreement between the injured person and **us**. **We** will not be bound by any judgments for damages obtained or settlements made without **our** written consent.

This coverage shall be excess of, but shall not duplicate the benefits available to an injured person under any workers compensation law, personal injury protection benefits law, disability benefits law, or similar law; under any **automobile** medical expense coverage; under any motor vehicle liability insurance coverage; or from the owner or operator of the **uninsured automobile** or any other person or organization jointly or severally liable together with such owner or operator for the **occurrence**.

## 3. EXCLUSIONS

Uninsured Motorist Coverage does not apply:

a. to punitive or exemplary damages.

b. to any person injured while **occupying** or injured by any **automobile** which is owned or leased by such person injured if such **automobile**:

  (1) is designed primarily for use on public roads;

  (2) is required to be registered and licensed prior to its use on public roads; and

  (3) is not insured for Uninsured Motorist Coverage by this policy.

c. to any person who settles the **bodily injury** claim without **our** written consent and such settlement prejudices **our** right of recovery, except as provided in **7. NOTICE OF PROPOSED SETTLEMENT - SUBROGATION RIGHTS** below.

d. to directly or indirectly benefit an insurer or self-insurer under any workers compensation law, disability benefits law or similar law.

    e.  to damages in tort for pain, suffering, mental anguish and inconvenience unless the injury or disease consists in whole or in part of:

        **(1)** significant and permanent loss of an important bodily function;

        **(2)** permanent injury within a reasonable degree of medical probability other than scarring or disfigurement;

        **(3)** significant and permanent scarring or disfigurement; or

        **(4)** death.

## 4. LIMIT OF LIABILITY

**We** will pay compensatory damages, including but not limited to loss of consortium, because of **bodily injury** up to the Limit of Liability stated in the Declarations as follows:

**a.** The limit stated for "each person" is the amount of coverage and the most **we** will pay for all compensatory damages, including but not limited to loss of consortium, because of or arising out of **bodily injury** to one person in any one **occurrence**.

**b.** The limit stated for "each occurrence" is the total amount of coverage and the most **we** will pay, subject to **4.a.** above, for all compensatory damages, including but not limited to loss of consortium, because of or arising out of **bodily injury** to two or more persons in any one **occurrence**.

**c.** The coverage provided as to two or more **automobiles** shall not be added together to determine the limit of liability for this coverage available to an injured person for any one **occurrence**, except as provided in **4.e.(1)** below.

**d.** If at the time of the **occurrence**, the injured person is **occupying your automobile** for which Uninsured Motorist Coverage is shown in the Declarations, the injured person is covered only to the extent this coverage is available to that **automobile**.

**e.** If **you** or a **relative** is injured while:

    **(1)** **occupying** an **automobile** not owned or leased by **you** or such **relative**, the "each person" and "each occurrence" limit of liability available is the highest limit shown in the Declarations for Uninsured Motorist Coverage for any one of **your automobiles**. This coverage is excess over the coverage applying to the **automobile** so occupied.

    **(2)** not **occupying** an **automobile**, the "each person" and "each occurrence" limit of liability is the highest limit shown in the Declarations for Uninsured Motorist Coverage for any one of **your automobiles**. This coverage does not apply if **you** or a **relative** have similar coverage available and that coverage is selected to apply to such injury.

**f.** The Limit of Liability is not increased because of the number of:

    **(1)** **automobiles** shown or premiums charged in the Declarations;

    **(2)** claims made or **suits** brought;

    **(3)** persons injured; or

    **(4)** **automobiles** involved in the **occurrence**.

**g.** **We** shall be entitled to a credit against total compensatory damages, including but not limited to loss of consortium, in the amount of the limits of the underinsured motorists liability policy. Such credit applies even if the settlement with the underinsured motorist's insurer is less than such insurer's full liability limits.

However, this credit shall not reduce the limit of **our** liability. Total compensatory damages, including but not limited to loss of consortium, means the full amount of compensatory damages, including but not limited to loss of consortium, determined to have been sustained regardless of the amount of underinsured motorist coverage.

## 5. OTHER UNINSURED MOTORIST COVERAGE

**a.** If there is other uninsured motorist coverage which applies, subject to the provisions of **4.e.(2)** above, **we** will pay **our** share of the damages. **Our** share will be the ratio of **our** limit of liability to the total of all limits which apply.

**b.** The coverage extended to **automobiles you** do not own will be excess over any other uninsured motorist coverage available to the injured person.

## 6. CONDITIONS

The following conditions apply in addition to those contained in **SECTION VI - GENERAL CONDITIONS** of the policy.

### a. TIME LIMITATION FOR ACTIONS AGAINST US

Any person seeking Uninsured Motorist Coverage must:

**(1)** present a claim for damages according to the terms and conditions of the policy; and

**(2)** conform with any applicable statute of limitations applying to **bodily injury** claims in the state in which the accident occurred.

### b. ARBITRATION

**(1)** If **we** and a person entitled to Uninsured Motorist Coverage under this endorsement do not agree:

**(a)** that the person is entitled to recover damages; or

**(b)** to the amount of those damages

the matter may be arbitrated provided both **we** and the injured person agree to arbitration. If so, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that a judge of a court having jurisdiction make the selection.

**(2)** Each party will pay its own arbitrator and share equally all other expenses of arbitration.

**(3)** Arbitration will take place in the county and state in which the person entitled to coverage lives. Local rules of procedure and evidence will apply.

**(4)** A decision by any two of the arbitrators will be binding and may be enforced by either party in a court of competent jurisdiction.

## 7. NOTICE OF PROPOSED SETTLEMENT - SUBROGATION RIGHTS

If an injured person or, in the case of death, the personal representative of such person agrees to settle a claim with a liability insurer and its insured, and such settlement does not fully satisfy the claim so as to create an underinsured motorist claim, written notice of the proposed settlement must be submitted to **us** by certified or registered mail.

Page 4 of 5

We shall then have thirty (30) days after receipt thereof to consider authorization of the settlement or retention of our subrogation rights.

If we choose to preserve our subrogation rights, we shall refuse permission to settle the claim and shall then, within thirty (30) days after receipt of notice of the proposed settlement, pay to the injured person the amount of the written offer from the underinsured motorist's liability insurer.  We shall then, upon final resolution of the underinsured motorist claim, be entitled to seek subrogation against the underinsured motorist and the liability insurer for the amounts paid to the injured person.

If we authorize settlement or fail to respond as required by the above paragraph, the injured person may execute a full release and finalize the proposed settlement without prejudice to any underinsured motorist claim.

All other policy terms and conditions apply.

Page 5 of 5

# AMENDMENT OF TRAILER LIABILITY COVERAGE
## Automobile Policy

79419 (3-99)

It is agreed:

Under **SECTION II - LIABILITY COVERAGE, 1. COVERAGE**, paragraph **b. Trailers** is deleted and replaced by the following:

**b.  Trailers**

(1)  The Liability Coverage provided by this policy for **your automobile** (that is not a **trailer**) or provided for any other **automobile** (that is not a **trailer**) extends:

(a)  to any **trailer** connected to or accidentally disconnected from such **automobile**. This coverage includes the **trailer** owner.

(b)  to any non-motorized farm machine or farm wagon while connected to or accidentally disconnected from such **automobile**. This coverage includes the non-motorized farm machine or farm wagon owner. No coverage applies to the operation or to the loading or unloading of the non-motorized farm machine or the farm wagon.

(2)  The Liability Coverage provided by this policy to **your automobile** (that is not a **trailer**) also extends:

(a)  to any **trailer** not maintained or used for commercial purposes:

1)  which is owned by **you**.

2)  If **you** are an individual:

a)  which is owned by a **relative** who also owns an **automobile** (that is not a **trailer**) scheduled in the Declarations; or

b)  which is owned by a **relative** who does not own an **automobile** other than the **trailer**.

3)  which is owned by any other individual who owns an **automobile** (that is not a **trailer**) which is scheduled in the Declarations or a relative of such individual who does not own an **automobile** other than the **trailer**. As used in only this subparagraph 3), relative means a person who resides with such individual and who is related to that individual by blood, marriage or adoption including a ward or foster child who resides with the individual.

4)  which is not owned by an individual or organization described in 1, 2) or 3) above while the trailer is in the care, custody or control of such individual or organization.

Coverage is extended only when such **trailer**:

1)  is not connected to an **automobile**. This coverage applies only to an individual or organization described in 1), 2), or 3) above for liability for ownership or use of the **trailer**.

2)  is connected to an **automobile** (that is not a **trailer**) to which Liability Coverage is not provided by this policy. This coverage applies to only the **trailer** owner's liability arising from use of the **trailer** by an individual or organization other than the **trailer** owner. No coverage applies to the owner or operator of the **automobile** or to the owner of a **trailer** described in 4) above.

(b)  to any **trailer** maintained or used for commercial purposes:

1)  which is owned by **you**; or

2)  which is owned by any other insured named in the Declarations, other than an additional insured.

3)  which is not owned by an individual or organization described in 1) or 2) above while the **trailer** is in the care, custody or control of such individual or organization.

Coverage is extended only when such trailer:

**1)** is not connected to an **automobile**. This coverage applies only to an individual **or** organization described in 1) or 2) above for liability for ownership or use of the **trailer**.

**2)** is connected to an **automobile** (that is not a **trailer)** to which Liability Coverage is not provided by this policy. This coverage applies to only to the **trailer** owner's liability arising from use of the **trailer** by an individual or organization other than the **trailer** owner. No coverage applies to the owner or operator of the **automobile** or the owner of a **trailer** described in 3) above.

**(3) Trailer Premium**

The premium for this coverage is based upon the **trailer** exposure **you** tell **us you** have at the beginning of each policy term. The total premium for **this** coverage shall be computed when **we** determine **your** actual **trailer** exposure at the end of each policy term based upon the rules and rates in effect at inception of that policy term.

All other policy terms and conditions apply.

79517 (1-07)

# AMENDATORY ENDORSEMENT - MOBILE SPECIAL EQUIPMENT and ROAD CONSTRUCTION, MAINTENANCE AND SPECIAL EQUIPMENT
### Automobile Policy

It is agreed:

1. **DEFINITIONS**

   Under **SECTION I - DEFINITIONS**, the following definitions are added:

   a. **Road construction, maintenance and special equipment** means any of the following types of **automobiles**, whether self-propelled or not:

   (1) one that travels on crawler treads;
   (2) one designed primarily for use off public roads;
   (3) one maintained for use solely on or next to premises **you** own, rent or lease;
   (4) forklift;
   (5) farm machinery;
   (6) bulldozer;
   (7) crane;
   (8) power shovel, steam shovel or gas shovel;
   (9) ditch or trench digger;
   (10) loader;
   (11) digger;
   (12) drill;
   (13) road grader;
   (14) road scraper;
   (15) road roller;
   (16) road oiler;
   (17) asphalt spreader;
   (18) tar spreader;
   (19) concrete mixer;
   (20) fertilizer spreader or applicator;
   (21) platform lift;
   (22) snow plow;
   (23) one maintained primarily to provide mobility to permanently attached equipment such as:
      a) cherry pickers and similar devices to raise and lower workers;
      b) tree or other spraying equipment;
      c) air compressors;
      d) pumps;
      e) generators;
      f) welding equipment;
      g) lighting equipment;
      h) building cleaning equipment;
      i) well drilling equipment;
      j) geophysical exploration equipment;
      k) septic tank cleaning equipment;
      l) vacuum cleaning equipment;
      m) sandblasting equipment; or
   (24) any similar equipment.

   b. **Mobile special equipment** means self-propelled **road construction, maintenance and special equipment** that:

Page 1 of 2

    (1) is owned by **you**;

    (2) is not scheduled in the Declarations for Liability coverage;

    (3) is being operated on a public roadway at the time of the **occurrence**; and

    (4) is subject to a financial responsibility or compulsory insurance law at the time of the **occurrence**.

2. **SECTION II - LIABILTY COVEAGE** is amended as follows:

    a. **SECTION II - LIABILITY COVERAGE** is extended to **mobile special equipment**.

    b. The following provision is added to **1. COVERAGE, c. Other Automobiles Covered**:

       to any **road construction, maintenance and special equipment**:

       (1) which is not self-propelled; and

       (2) while towed by **your automobile**

       provided that **your automobile** is insured for Liability Coverage by the policy.

    c. The following exclusions are added to **2. EXCLUSIONS**:

       (1) to any **occurrence** arising out of the operation, maintenance or use of any **road construction, maintenance and special equipment**. This exclusion does not apply if the operation is solely for the purpose of locomotion on a public roadway at the time of the **occurrence** if the **road construction, maintenance and special equipment** is insured for Liability Coverage by the policy.

       (2) to any **occurrence** arising out of the operation, maintenance or use of any **mobile special equipment** not being operated on a public roadway at the time of the **occurrence**.

       (3) to any **occurrence** covered by insurance provided by any other policy, form or endorsement.

    d. Under **4. LIMIT OF INSURANCE**, the following provision is added:

       The limit of liability applicable to **mobile special equipment** shall not exceed the highest limit of liability stated in the Declarations for any one of **your automobiles** as applied according to **SECTION II - LIABILITY COVERAGE, 4. LIMIT OF LIABILITY** of the policy.

    e. **5. FINANCIAL RESPONSIBILITY AND COMPULSORY INSURANCE LAWS** is deleted and replaced by the following as it applies **mobile special equipment** only.

      5. **FINANCIAL RESPONSIBILITY AND COMPULSORY INSURANCE LAWS**

       While **mobile special equipment** is subject to laws of another state or Canada, **we** will:

       a. increase the Limit of Liability for Liability Coverage to comply with the minimum requirements of a financial responsibility or compulsory insurance law of the jurisdiction where the **mobile special equipment** is being operated; and

       b. afford the minimum amounts for the types of mandatory coverages required by the jurisdiction where the **mobile special equipment** is being operated.

    f. Under **6. OTHER INSURANCE**, the following provision is added:

       Coverage provided for **road construction, maintenance and special equipment** and **mobile special equipment** shall apply only if no other insurance applies.

All other policy terms and conditions apply.

# POLLUTION LIABILITY EXCLUSION
## Automobile Policy

79524 (8-92)

It is agreed:

**SECTION II - LIABILITY COVERAGE** does not apply to:

1. **Bodily injury** or **property damage** resulting from the actual, alleged or threatened discharge, release, escape, seepage, migration, or dispersal of **pollutants:**

   a. that are, or are contained in any property that is:

      (1) being transported or towed by, handled or prepared for placement into or upon, or taken from the **automobile;**

      (2) otherwise in the course of transit by **you** or on **your** behalf; or

      (3) being disposed of, stored, treated or processed into or upon the **automobile;**

   b. before such **pollutants** or property containing **pollutants** are moved from the place they are accepted by **you** or anyone acting on **your** behalf for placement into or onto the **automobile;** or

   c. after such **pollutants** or property containing **pollutants** are removed from the **automobile** to where they are delivered, disposed of or abandoned by **you** or anyone acting in **your** behalf.

   1.a. above does not apply to **pollutants** that are needed or result from the normal mechanical, electrical or hydraulic functioning of the **automobile** or its parts, if the discharge, release, escape, seepage, migration or dispersal of such **pollutants** is directly from a part of the **automobile** designed to hold, store, receive or dispose of such **pollutants** by the **automobile** manufacturer.

   1.b. and 1.c. above do not apply, if as a direct result of the maintenance or use of the **automobile**, **pollutants** or property containing **pollutants** which are not in or upon the **automobile**, are upset, overturned or damaged at any premises not owned by or leased to **you**. The discharge, release, escape, seepage, migration or dispersal of the **pollutants** must be directly caused by such upset, overturn or damage.

2. Any loss, cost or expense arising out of any:

   a. request, demand or order that **you** or anyone else test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants;** or

   b. claim or **suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants.**

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, liquids, gases and waste. Waste materials include materials to be recycled, reconditioned or reclaimed.

All other policy terms and conditions apply.

79539 (3-99)

# COMBINED LIMIT OF LIABILITY
## Automobile Policy

It is agreed:

Under **SECTION II - LIABILITY COVERAGE, 4. LIMIT OF LIABILITY** is deleted and replaced by the following:

**LIMIT OF LIABILITY**

We will pay damages for **bodily injury** or **property damage** up to the limit of liability stated in the Declarations for this coverage. Such damages shall be paid as follows:

a. The limit stated for "each occurrence" is the total amount of coverage and the most **we will** pay for damages because of or arising out of all **bodily injury** and **property damages** in any one **occurrence**.

b. Subject to the provisions of a. above, the limit of liability applicable to a **trailer**, non-motorized farm machine or farm wagon which is connected to an **automobile** covered by this policy shall be the limit of liability stated in the Declarations for this coverage as it applies to such **automobile**. The **automobile** and connected **trailer**, non-motorized farm machine or farm wagon are considered one **automobile** and do not increase the limit of liability.

c. The limit of liability applicable to a **trailer** covered by this policy:

   **(1)** which is not connected to an **automobile**; or

   **(2)** which is connected to an **automobile** not covered by this policy;

   shall be the limit liability applicable to **your automobile**. If this policy covers more than one of **your automobiles**, the highest limit of liability applicable to any one such **automobile** shall apply.

d. The limit of liability for this coverage may not be added to the limits for the same or similar coverage applying to other **automobiles** insured by this policy to determine the amount of coverage available for any one occurrence regardless of the number of:

   **(1)** **automobiles** shown in the Declarations:

   **(2)** premiums charged in the Declarations or premiums paid;

   **(3)** claims presented or **suits** brought;

   **(4)** persons injured; or

   **(5)** **automobiles** involved in the **occurrence**.

All other policy terms and conditions apply.

# NEWLY ACQUIRED AUTOMOBILE COVERAGE
## Automobile Policy

79540 (3-99)

It is agreed:

### 1. COVERAGE

Provided all **automobiles you** own that are licensed for use on public roadways, except any that are out of service because of mechanical breakdown or damage sustained in an accident, are scheduled in the Declarations on the inception date of the current policy term:

   **a.** we will extend the following coverages to any additional **automobile (that is not a trailer)** which **you** acquire during the policy term:

      **(1)** Liability Coverage;

      **(2)** $100 Deductible Comprehensive Coverage;

      **(3)** $250 Deductible Collision Coverage;

      **(4)** Uninsured Motorist Coverage and Underinsured Motorist Coverage; and

      **(5)** Automobile Medical Payments or any mandatory no-fault insurance coverages.

   **b.** we will extend the following coverages to any additional **trailers** which **you** acquire during the policy term:

      **(1)** $100 Deductible Comprehensive Coverage; and

      **(2)** $250 Deductible Collision Coverage.

These coverages shall apply as they are provided by the policy for the **automobiles** which are scheduled in the Declarations. Coverage shall apply only for the remainder of the policy term. However, with regard to comprehensive and collision coverages:

   **a.** we shall extend only those coverages (regardless of deductible) common to all of **your automobiles** scheduled in the Declarations.

   **b.** **you** may at any time during the first 30 days after **you** take possession of the **automobile**, purchase the broadest coverages applicable to any one **automobile** scheduled in the Declarations.

### 2. CONDITIONS

The following conditions apply to this coverage extension in addition to those contained in **SECTION VI - GENERAL CONDITIONS** of the policy.

   **a.** If a claim is made under the terms of this coverage extension, **you** shall be charged the appropriate premium for the **automobile** involved in the loss. The premium charge shall be made from the date **you** took possession of the **automobile** through the end of the current policy term.

   **b.** We may examine and audit **your** books and records to determine the premium for this coverage at any time:

      **(1)** during the policy term; and
      **(2)** within one year after the expiration of this insurance.

   **c.** **You** shall report all additional **automobiles** to **us** within 30 days following the expiration of each policy term.

   **d.** We shall compute the actual earned premium for each policy term on a pro-rata basis determined by the number of additional **automobiles you** acquire during such policy term.

### 3. Under **SECTION II-LIABILITY COVERAGE, 1. COVERAGES c. Other Automobiles Covered**, subparagraph (2)(b) is deleted.

### 4. Under **SECTION III-DAMAGE TO YOUR AUTOMOBILE, 1. COVERAGES, f. Other Automobiles Covered**, subparagraph (2)(b) is deleted.

All other policy terms and conditions apply.

79547 (2-11)

# COMPREHENSIVE AUTOMOBILE LIABILITY
## Automobile Policy

It is agreed:

## 1. COVERAGE

**SECTION II - LIABILITY COVERAGE** is extended to any **automobile** (that is not a **trailer**).

**Our** liability under this coverage extension shall not exceed the Limit of Liability stated in the Declarations for Comprehensive Automobile Liability as applied according to **SECTION II - LIABILITY COVERAGE, 4. LIMIT OF LIABILITY** of the policy.

## 2. EXCLUSIONS

The following exclusions apply in addition to those contained in **SECTION II - LIABILITY COVERAGE** of the policy. This coverage extension does not apply to:
a. the owner of any **automobile** (that is not a **trailer**) **you** hire, lease or borrow or the owner's agent or employees.
b. **your** executive officers or partners, if the **automobile** (that is not a **trailer**) is owned by the:
   (1) executive officer or partner; or
   (2) any member of the executive officer's or partner's household.
c. **your** employee, if the **automobile** is owned by such employee or any member of the employee's household.
d. any **automobile** (that is not a **trailer**) **you** lease while such **automobile** (that is not a **trailer**) is:
   (1) leased to **you** in writing in accordance with an agreement in which the lessor holds **you** harmless; and
   (2) used pursuant to operating rights (permits) granted to **you** by a public authority....
e. a lessee from whom **you** sublease an **automobile** (that is not a **trailer**) or the lessee's agents or employees.
f. to anyone, except **you** and **your** employees, with respect to loading or unloading an **automobile you** do not own.
g. any **automobile** covered by any other provision or extension of the policy.

## 3. CONDITIONS

The following conditions apply in addition to those contained in **SECTION VI - GENERAL CONDITIONS** of the policy.

### a. Records

**You** must keep records of the information **we** need for premium computation and send **us** copies at such times as **we** may request.

### b. Examination of Your Books and Records

**We** may examine and audit **your** books and records to determine the premium for this coverage at any time:
(1) during the policy term; and
(2) within one year after the expiration of this insurance.
Records include:
(1) payroll, registers, ledgers, contracts, vouchers, tax reports, journals and disbursement records; and
(2) any data storage programs and data retrieval programs.
The following have the same rights as **we** have under this condition:
(1) any rate service organization;
(2) any rating organization;
(3) any advisory organization;
(4) any similar organization; or
(5) anyone acting on **our** behalf.

### c. Final Premium

(1) The premium stated in the Declarations for this coverage extension is an estimate of **your** exposures for the policy term, including the total cost to hire **automobiles** (that are not **trailers**) during the policy term. The final premium will be determined after each policy term ends on the basis of **your** actual exposures, including the total cost **you** incur to hire **automobiles** (that are not **trailers**) during that term. **We** shall use the rate for the coverage in effect on the inception date of the term.
(2) If the final premium is more than the premium **you** paid to **us**, **you** must pay **us** the balance. If it is less, **we** will refund the balance to **you**. Final premium shall not be less than the minimum premium for this coverage extension.

If this policy is canceled, final premium will be calculated pro rata based on the time this policy was in force. Final premium shall not be less than the minimum premium for this coverage extension.

**d. Premium**

**You** must pay all premium, including the final premium, by the due date shown on the bill.

Failure to pay any premium, including the final premium, by the due date shown on the bill will be considered to be nonpayment of premium.

All other policy terms and conditions apply.

79547 (2-11)

# EXCLUSION OF INJURY TO FAMILY MEMBERS
## Automobile Policy

79550 (6-92)

It is agreed:

**SECTION II - LIABILITY COVERAGE** does not apply to **bodily injury** to **you** or any **relative.**

All other policy terms and conditions apply.

79706 (3-12)

**Florida**
# POLICY CANCELLATION AND NONRENEWAL
**Automobile Policy**

It is agreed:

The following conditions apply in addition to those contained in **SECTION VI - GENERAL CONDITIONS** of the policy.

1. **CANCELLATION**
   a. **You** may cancel this policy by returning it to **us** or by giving **us** written notice of the future date at which **you** wish the cancellation to take effect. However, during the first 60 days this policy is in effect **you** may cancel only for one or more of the following reasons:
      (1) **your automobile** has been totally destroyed;
      (2) ownership of **your automobile** has been transferred to another person or corporation; or
      (3) **you** have purchased another policy to replace this policy.
   b. If **you** are:
      (1) a natural person; or
      (2) one or more related persons residing in the same household; and
      this policy insures only four or less **private passenger automobiles**, **we** may cancel this policy by mailing or delivering written notice stating the reason for cancellation to **you** at the address shown in the Declarations. This notice shall be mailed or delivered:
      (1) at least 10 days prior to the effective date when the reason for cancellation is nonpayment of premium; or
      (2) at least 45 days prior to the effective date when cancellation is for any other reason.
      **We** will not cancel for nonpayment of premium during the first 60 days this policy is in effect, unless a check for payment of premium issued to **us** by **you** or on **your** behalf is dishonored for any reason or any other type of premium payment is determined to be rejected or invalid.
      If this policy has been in effect 60 days or more, **we** may cancel this policy only for:
      (1) nonpayment of premium;
      (2) material misrepresentation or fraud; or
      (3) the suspension or revocation of **your** driver's license or motor vehicle registration

   or the driver's license of any other operator who either resides in **your** household or customarily operates an **automobile** insured by this policy. Such suspension or revocation must have occurred during the policy period or within 180 days immediately preceding the effective date of the policy period.

   If **we** determine that **you** have been charged a premium that is incorrect for the coverage **you** applied for on the insurance application, **we** shall immediately provide **you** with notice of the amount of additional premium due **us**. If within 10 days of the date of notice, or a longer period if specified in such notice, **you** do not either:
      (1) pay the additional premium due and maintain the policy in full force under its original terms; or
      (2) cancel this policy and demand a pro rata refund of any unearned premium
      then this policy shall be canceled 14 days from the date of notice or a longer period if specified in such notice.
   c. If **you** are not subject to **1.b.** above, **we** may cancel this policy by mailing or delivering written notice stating the reason for cancellation to **you** at the address shown in the Declarations. This notice shall be mailed or delivered:
      (1) at least 10 days prior to the effective date when the reason for cancellation is nonpayment of premium; or
      (2) at least 45 days prior to the effective date when cancellation is for other than nonpayment of premium.
      **We** will not cancel for nonpayment of premium during the first 60 days this policy is in effect, unless a check for payment of premium issued to **us** by **you** or on **your** behalf is dishonored for any reason or any other type of premium payment is determined to be rejected or invalid.
   d. If **you** cancel this policy, **we** shall mail any unearned premium to **you** within 30 days after the effective date of the cancellation.
      If **we** cancel this policy, **we** shall mail any unearned premium to **you** within 15 days after the effective date of the cancellation.

If this is an audit policy, then, subject to **your** providing **us** or **our** agent the necessary data for audit, **we** will refund any unearned premium within 90 days from the date of cancellation. If **our** audit is not completed within this time limitation, then **we** will accept **your** audit, and any unearned premium refund due will be mailed within 10 working days of receipt of **your** audit.

**2. NONRENEWAL**

If **we** decide not to renew this policy, **we** will mail or deliver written notice stating the reason for nonrenewal to **you** at the address shown in the Declarations. This notice shall be mailed or delivered at least 45 days prior to the expiration of this policy.

All other policy terms and conditions apply.

79706 (3-12)

89058 (4-07)

# AMENDATORY ENDORSEMENT
## SECTION II - LIABILITY COVERAGE
### Automobile Policy

It is agreed:

Under **SECTION II - LIABILITY COVERAGE, 2. EXCLUSIONS, I.** is deleted and replaced by the following:

I. to any person or organization for damage to property or an **automobile** owned by, rented to or in the care, custody or control of that person or organization.  This exclusion does not apply to **property damage** to a residence or private garage, caused by a **private passenger automobile**, when the residence or private garage is rented to or is in the care, custody or control of that person or organization.

All other policy terms and conditions apply.

Page 1 of 1

89358 (1-13)

**Florida**
# AUTOMOBILE MEDICAL PAYMENTS COVERAGE
**Automobile Policy**

It is agreed:

## A. DEFINITIONS

The following definitions are added as respects this endorsement only.

1. **Entity wholly owned** means a proprietorship, group practice, partnership, or corporation that provides health care services rendered by licensed health care practitioners and in which licensed health care practitioners are the business owners of all aspects of the business entity, including, but not limited to, being reflected as the business owners on the title or lease of the physical facility, filing taxes as the business owners, being account holders on the entity's bank account, being listed as the principals on all incorporation documents required by this state, and having ultimate authority over all personnel and compensation decisions relating to the entity. However, this definition does not apply to an entity that is wholly owned, directly or indirectly, by a hospital licensed under chapter 395, Florida Statutes.

2. **Medically necessary** means a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing or treating an illness, injury, disease or symptom in a manner that is:
   a. in accordance with generally accepted standards of medical practice;
   b. clinically appropriate in terms of type, frequency, extent, site and duration; and
   c. not primarily for the convenience of the patient, physician or other health care provider.

## B. COVERAGE

1. When Medical Payments is shown in the Declarations, **we** will pay Automobile Medical Payments Coverage to or for any person:
   a. who accidentally sustains **bodily injury**;
   b. while occupying or getting into or out of **your automobile**; and
   c. while **your automobile** is being used with **your** permission.
   This coverage is extended to a **trailer** designed for use with **your automobile**.

2. Automobile Medical Payments Coverage shall consist of:
   a. (1) Medical Benefits, meaning the following schedule of maximum charges specified in the Florida Motor Vehicle No-Fault Law, section 627.736, Florida Statutes, for **medically necessary** medical, surgical, X-ray, dental and rehabilitative services, including prosthetic devices and **medically necessary** ambulance, hospital and nursing services, if the injured person receives initial services and care within 14 days after the accident involving **your automobile**.
      (a) for emergency transport and treatment by providers licensed under chapter 401, Florida Statutes, 200 percent of Medicare.
      (b) for emergency services and care provided by a hospital licensed under chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.
      (c) for emergency services and care as defined by s. 395.002, Florida Statutes, provided in a facility licensed under chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.
      (d) for hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.
      (e) for hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

(f) for all other medical services, supplies, and care, 200 percent of the allowable amount under:

1) the participating physicians fee schedule of Medicare Part B, except as provided in 2) and 3) below.

2) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

3) the Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B, as provided in (f) above, we will limit reimbursement to the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation will not be reimbursed by us.

(2) For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B. However, the Medical Benefits shall provide reimbursement only for:

(a) initial services and care that are lawfully provided, supervised, ordered, or prescribed by a physician licensed under chapter 458 or chapter 459, Florida Statutes, a dentist licensed under chapter 466, Florida Statutes, or a chiropractic physician licensed under chapter 460, Florida Statutes, or that are provided in a hospital or in a facility that owns, or is wholly owned by, a hospital. Initial services and care may also be provided by a person or entity licensed under part III of chapter 401, Florida Statutes, which provides emergency transportation and treatment; and

(b) followup services and care referred by the health care provider of the initial services and care, consistent with the underlying medical diagnosis rendered in the initial services and care that are lawfully provided, supervised, ordered or prescribed by a physician licensed under chapter 458 or chapter 459, Florida Statutes, a chiropractic physician licensed under chapter 460, Florida Statutes, a dentist licensed under chapter 466, Florida Statutes, or, to the extent permitted by applicable law and under the supervision of such physician, osteopathic physician, chiropractic physician, or dentist, by a physician assistant licensed under chapter 458 or chapter 459, Florida Statutes, or an advanced registered nurse practitioner licensed under chapter 464, Florida Statutes. Followup services and care may also be provided by the following persons or entities:

1) a hospital or ambulatory surgical center licensed under chapter 395, Florida Statutes.

2) an entity wholly owned by one or more physicians licensed under chapter 458 or chapter 459, Florida Statutes, chiropractic physicians licensed under chapter 460, Florida Statutes, or dentists licensed under chapter 466, Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners.

3) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals.

4) a physical therapist licensed under chapter 486, Florida

Statutes, based upon a referral by a provider described in (b) immediately above.

5) a health care clinic licensed under part X of chapter 400, Florida Statutes, which is accredited by an accrediting organization whose standards incorporate comparable regulations required by this state, or:

a) has a medical director licensed under chapter 458, Florida Statutes, chapter 459, Florida Statutes, or chapter 460, Florida Statutes;

b) has been continuously licensed for more than 3 years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

c) provides at least four of the following medical specialties:

i general medicine.
ii radiography.
iii orthopedic medicine.
iv physical medicine.
v physical therapy.
vi physical rehabilitation.
vii prescribing or dispensing outpatient prescription medication.
viii laboratory services.

Medical Benefits do not include massage as defined in s. 480.033, Florida Statutes, or acupuncture as defined in s. 457.102, Florida Statutes, regardless of the person, entity, or licensee providing massage or acupuncture, and a licensed massage therapist or licensed acupuncturist may not be reimbursed for Medical Benefits under this provision.

b. Reasonable funeral service expenses equal to the lesser of $2,000 or the remainder of the unused Automobile Medical Payments Coverage per person. Reasonable funeral service expenses must be incurred within three years of the **occurrence** resulting in death and reported to **us** within one year of the **occurrence**. We may pay reasonable funeral service expenses to the executor or administrator of the deceased, to any of the deceased's relatives by blood, legal adoption, or marriage, or to any person appearing to **us** to be equitably entitled to such benefits.

C. **OTHER AUTOMOBILES COVERED**
The Automobile Medical Payments Coverage provided for **your automobile** also applies to certain other **automobiles**. It applies:

1. to an **automobile you** do not own which is temporarily used as a substitute for **your automobile. Your automobile** must be out of use because of breakdown, repair, servicing, loss or destruction.

2. to an **automobile** of the same type which **you** acquire after the inception date of the current policy term if:

a. it replaces **your automobile** to which Automobile Medical Payments Coverage applies; or

b. it is an additional **automobile**, provided:

(1) **we** insure all other **automobiles you** already own for Automobile Medical Payments Coverage;

(2) **you** report the additional **automobile** to **us** within 30 days of delivery; and

(3) **you** pay any required additional premiums.

This extension does not apply if **you** have other **automobile** medical benefits insurance.

D. **EXCLUSIONS**
Automobile Medical Payments Coverage does not apply:

1. to **bodily injury** to any person resulting from or arising out of an intentional act of that person. This exclusion applies only when the intentional act was designed to produce **bodily injury.**

2. to any person operating or employed by an **automobile** garage, repair shop, sales agency, service station or public parking place. This exclusion does not apply to **you** or a **relative.**

3. to any person while occupying or getting into or out of any **automobile** while used as a public or livery conveyance. This exclusion does not apply to car pooling on a share the expense basis.

4. to any person while occupying or getting into or out of any **automobile** while:

a. preparing for;
b. practicing for; or
c. participating in;
any prearranged racing, speed or demolition contest.

5.  to any person occupying or getting into or out of **your automobile** without a reasonable belief of **your** permission to do so.

6.  to **bodily injury** resulting from or arising out of war, whether declared or not declared, insurrection or any of their consequences.

7.  to any expenses that would be payable under any workers compensation law or any similar law.

8.  to any person occupying, getting into or out of, or struck by an **automobile** located for use as a residence or premises.

9.  to any person injured while committing a felony.

## E.  LIMIT OF LIABILITY

1.  The Limit of Liability stated in the Declarations for each person is the most **we** will pay to or for any person in one **occurrence** for medical benefits and reasonable funeral service expenses.

2.  Subject to **E.1.** above, the most **we** will pay for reasonable funeral service expenses is $2,000 per person.

3.  The Limit of Liability is not increased because of the number of:

    a.  **automobiles** shown or premiums charged in the Declarations;

    b.  claims made or **suits** brought;

    c.  persons injured; or

    d.  **automobiles** involved in the **occurrence**.

## F.  INDIVIDUAL NAMED INSURED

If the first named insured in the Declarations is an individual and the **automobile** described in the Declarations is a **private passenger automobile** to which Automobile Medical Payments Coverage applies, the following coverage extension applies:

1.  Automobile Medical Payments Coverage applies to **you:**

    a.  while occupying;

    b.  while getting into or out of; or

    c.  if struck by

    an **automobile** not owned by or furnished or available for regular use to **you.**

2.  The coverage extended in **F.1.** above is also afforded to a **relative** who does not own an **automobile.**

3.  We will not pay any amount for medical benefits or reasonable funeral service expenses under this coverage extension that duplicates amounts paid or payable by other insurance of any type.

This coverage extension is subject to all provisions of **E.** above.

## G.  OTHER INSURANCE

The coverage afforded by this endorsement shall be excess over benefits paid or payable under the Florida Motor Vehicle No-Fault Law.  However, when the injured person is eligible for Personal Injury Protection Benefits, coverage shall only apply to the extent coverage is afforded under the Personal Injury Protection Benefits of this policy and is not payable under the Personal Injury Protection Benefits of this policy due to:

1.  the 80% limitation; or

2.  the maximum aggregate limitation.

## H.  FRAUD

Benefits are not due or payable to or on the behalf of an insured person if that person has committed, by a material act or omission, insurance fraud relating to Automobile Medical Payments Coverage under this policy, if the fraud is admitted to in a sworn statement by the insured or established in a court of competent jurisdiction.  Any insurance fraud voids all coverage arising from the claim related to such fraud under the Automobile Medical Payments Coverage of the insured person who committed the fraud, irrespective of whether a portion of the insured person's claim may be legitimate, and any benefits paid before the discovery of the fraud is recoverable by **us** in its entirety from the person who committed insurance fraud.  The prevailing party is entitled to its costs and attorney fees in any action in which it prevails in **our** action to enforce **our** right of recovery under this paragraph.

If **we** have a reasonable belief that a fraudulent insurance act, for the purposes of coverage under this coverage form, has been committed, **we** shall notify the claimant, in writing, within 30 days after submission of the claim that the claim is being investigated for suspected fraud.  Beginning at the end of the initial 30-day period, **we** have an additional 60 days to conduct fraud investigation.  No later than 90 days after the submission of the claim, **we** must deny the claim or pay the claim with simple interest.  Interest shall be assessed from the date the claim was submitted until the day the claim is paid.  All claims denied for suspected fraudulent insurance acts shall be reported to the Division of Insurance Fraud.

I.  The following provisions apply in addition to those contained in **SECTION V - WHAT YOU MUST DO AFTER AN ACCIDENT OR LOSS** of the policy.

## MEDICAL REPORTS; PROOF OF CLAIM; REHABILITATION NOTICE

As soon as practicable, the injured person or someone on his or her behalf shall send **us** written proof of claim, under oath if required.  This must include full details of the **bodily injury**, treatment, and rehabilitation received and considered. It must also in-

89358 (1-13)

clude such other information as may help us determine the amount we must pay. At our request the injured person or someone acting on the behalf of the injured person must authorize us to obtain medical and other records which pertain to the **bodily injury.** The injured person must, at our expense, submit to mental or physical examinations by doctors we select as often as we may reasonably require. An injured person's refusal to submit to or failure to appear at two examinations raises a rebuttable presumption that the refusal or failure was unreasonable. If an injured person unreasonably refuses to submit to or fails to appear at an examination, we are no longer liable for subsequent Medical Benefits.

**EXAMINATION UNDER OATH**
An injured person seeking benefits under Automobile Medical Payments Coverage must comply with

the terms of this policy, which include, but are not limited to, submitting to an examination under oath. The scope of questioning during the examination is limited to relevant information or information that could reasonably be expected to lead to relevant information. Compliance with the examination under oath requirement pursuant to the Florida Motor Vehicle No-Fault Law is a condition precedent to receiving benefits.

All other policy terms and conditions apply.

89358 (1-13)

89366 (6-13)

**Florida**
# NO-FAULT INSURANCE / PERSONAL INJURY PROTECTION (PIP) ENDORSEMENT

It is agreed:

## SECTION I - DEFINITIONS

The following definitions apply to only this endorsement. The definitions contained in the policy do not apply to the coverage provided by this endorsement.

A. **Bodily injury** means physical injury, sickness, disease or death.

B. **Emergency medical condition** means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

  1. serious jeopardy to patient health.
  2. serious impairment to bodily functions.
  3. serious dysfunction of any bodily organ or part.

C. **Entity wholly owned** means a proprietorship, group practice, partnership, or corporation that provides health care services rendered by licensed health care practitioners and in which licensed health care practitioners are the business owners of all aspects of the business entity, including, but not limited to, being reflected as the business owners on the title or lease of the physical facility, filing taxes as the business owners, being account holders on the entity's bank account, being listed as the principals on all incorporation documents required by this state, and having ultimate authority over all personnel and compensation decisions relating to the entity. However, this definition does not apply to an entity that is wholly owned, directly or indirectly, by a hospital licensed under chapter 395, Florida Statutes.

D. **Insured motor vehicle** means:

  1. a motor vehicle:
     a. owned by the **named insured**;
     b. for which the **named insured** is required to maintain security under the Florida Motor Vehicle No-Fault Law; and
     c. for which a premium is shown in the Declarations for Personal Injury Protection or which is a trailer designed for use with a **motor vehicle**.
  2. a motor vehicle that replaces a described **motor vehicle** for which a Personal Injury Protection premium is charged for the described

motor vehicle under the policy or which is a trailer designed for use with a **motor vehicle**:

     a. which has been acquired by the **named insured** during the current policy term; and
     b. for which the **named insured** is required to maintain security under the Florida Motor Vehicle No-Fault Law.

  3. an additional **motor vehicle**:
     a. which has been acquired by the **named insured** during the current policy term; and
     b. for which the **named insured** is required to maintain security under the Florida Motor Vehicle No-Fault Law

  provided:

     a. every other **motor vehicle** owned by the **named insured** is an **insured motor vehicle** for Personal Injury Protection under section **D.1.** or **D.2.** above; and
     b. the **named insured** pays any required additional premiums for the additional **motor vehicle**.

E. **Medically necessary** means a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing or treating an illness, injury, disease or symptom in a manner that is:

  1. in accordance with generally accepted standards of medical practice;
  2. clinically appropriate in terms of type, frequency, extent, site and duration; and
  3. not primarily for the convenience of the patient, physician or other health care provider.

F. **Motor vehicle** means any self-propelled vehicle with four or more wheels which is of a type both designed and required to be licensed for use on the highways of the state of Florida and any trailer or semi-trailer designed for use with such vehicle and includes:

  1. a private passenger **motor vehicle**, which is any **motor vehicle** which is a sedan, station wagon, or jeep-type vehicle and, if not used primarily for occupational, professional, or business purposes, a **motor vehicle** of the pickup, panel, van, camper or motor home type.

2. a commercial **motor vehicle**, which is any **motor vehicle** which is not a private passenger **motor vehicle.**

The term **motor vehicle** does not include a mobile home or any **motor vehicle** which is used in mass transit, other than public school transportation, and designed to transport more than five passengers exclusive of the operator of the **motor vehicle** and which is owned by a municipality, a transit authority or a political subdivision of the state.

G. **Occupying** means in or upon, entering into or alighting from.

H. **Owner** means a person or organization who holds the legal title to a **motor vehicle.** It also means a:
   1. debtor having the right of possession in the event a **motor vehicle** is the subject of a security agreement;
   2. lessee having the right of possession in the event a **motor vehicle** is the subject of a lease with option to buy and such a lease agreement is for a period of six months or more; or
   3. lessee having the right of possession in the event a **motor vehicle** is the subject of a lease without option to buy and such lease agreement:
      a. is for a period of six months or more; and
      b. provides that the lessee shall be responsible for securing insurance.

I. **Named Insured** means the insured shown in the Declarations and if an individual, your spouse who resides in the same household.

J. **Relative** means a person related to the **named Insured** by blood, marriage or adoption who usually makes her or his home in the same family unit as the **named insured,** whether or not temporarily living elsewhere. **Relative** includes a ward or foster child who usually resides with the **named insured.**

K. **We, us** or **our** means the Company providing this insurance.

## SECTION II - PERSONAL INJURY PROTECTION INSURANCE

A. **COVERAGE**
   1. Subject to the provisions of the Florida Motor Vehicle No-Fault Law, **we** will pay Personal Injury Protection Benefits for loss sustained by such person as a result of **bodily injury** arising out of the ownership, maintenance, or use of a **motor vehicle** to:
      a. the **named insured** while **occupying** a **motor vehicle** or while not **occupying** a self-propelled vehicle if the **bodily injury** is caused by physical contact with a **motor vehicle;**
      b. **relatives** of the **named insured** residing in the same household while **occupying** a **motor vehicle** or while not **occupying** a self-propelled vehicle if the **bodily injury** is

caused by physical contact with a **motor vehicle;**

c. persons operating the **insured motor vehicle;**

d. passengers in the **insured motor vehicle;** or

e. persons struck by the **insured motor vehicle** while not **occupying** a self-propelled vehicle.

2. If Personal Injury Protection is shown in the Declarations, the benefits shall consist of:
   a. (1) Medical Benefits, meaning 80% of the following schedule of maximum charges specified in the Florida Motor Vehicle No-Fault Law, section 627.736, Florida Statutes, for **medically necessary** medical, surgical, X-ray, dental and rehabilitative services, including prosthetic devices and **medically necessary** ambulance, hospital and nursing services, if the injured person receives initial services and care within 14 days after the **motor vehicle** accident:
      (a) for emergency transport and treatment by providers licensed under chapter 401, Florida Statutes, 200 percent of Medicare.
      (b) for emergency services and care provided by a hospital licensed under chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.
      (c) for emergency services and care as defined by s. 395.002, Florida Statutes, provided in a facility licensed under chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.
      (d) for hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.
      (e) for hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.
      (f) for all other medical services, supplies, and care, 200 percent of the allowable amount under:

**1)** the participating physicians fee schedule of Medicare Part B except as provided in **2)** and **3)** below.

**2)** Medicare Part B, in the case of services, supplies and care provided by ambulatory surgical centers and clinical laboratories.

**3)** the Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B, as provided in **(f)** above, we will limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation will not be reimbursed by us.

**(2)** For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B. However, the Medical Benefits shall provide reimbursement only for such:

**(a)** initial services and care that are lawfully provided, supervised, ordered, or prescribed by a physician licensed under chapter 458 or chapter 459, Florida Statutes, a dentist licensed under chapter 466, Florida Statutes, or a chiropractic physician licensed under chapter 460, Florida Statutes, or that are provided in a hospital or in a facility that owns, or is wholly owned by, a hospital. Initial services and care may also be provided by a person or entity licensed under part III of chapter 401, Florida Statutes, which provides emergency transportation and treatment; and

**(b)** followup services and care referred by the health care provider of the initial services and care, consistent with the underlying medical diagnosis rendered in the initial services and care that are lawfully provided, supervised, ordered or prescribed by a physician licensed under chapter 458 or chapter 459, Florida Statutes, a chiropractic physician licensed under chapter 460, Florida Statutes, a dentist licensed under chapter 466, Florida Statutes, or, to the extent permitted by applicable law and under the supervision of such physician, osteopathic physician, chiropractic physician, or dentist, by a physician assistant licensed under chapter 458 or chapter 459, Florida Statutes, or an advanced registered nurse practitioner licensed under chapter 464, Florida Statutes. Followup services and care may also be provided by the following persons or entities:

**1)** a hospital or ambulatory surgical center licensed under chapter 395, Florida Statutes.

**2)** an **entity wholly owned** by one or more physicians licensed under chapter 458 or chapter 459, Florida Statutes, chiropractic physicians licensed under chapter 460, Florida Statutes, or dentists licensed under chapter 466, Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners.

**3)** an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals.

**4)** a physical therapist licensed under chapter 486, Florida Statutes, based upon a referral by a provider described in **(b)** immediately above.

89366 (6-13)

5) a health care clinic licensed under part X of chapter 400, Florida Statutes, which is accredited by an accrediting organization whose standards incorporate comparable regulations required by this state, or:

   a) has a medical director licensed under chapter 458, Florida Statutes, chapter 459, Florida Statutes, or chapter 460, Florida Statutes;

   b) has been continuously licensed for more than 3 years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

   c) provides at least four of the following medical specialties:

     i   general medicine.
     ii  radiography.
     iii orthopedic medicine.
     iv  physical medicine.
     v   physical therapy.
     vi  physical rehabilitation.
     vii prescribing or dispensing outpatient prescription medication.
     viii laboratory services.

Medical Benefit, do not include massage as defined in s. 480.033, Florida Statutes, or acupuncture as defined in s. 457.102, Florida Statutes, regardless of the person, entity, or licensee providing massage or acupuncture, and a licensed massage therapist or licensed acupuncturist may not be reimbursed for Medical Benefits under this provision.

b. **Disability Benefits**, meaning 60% of any loss of gross income and loss of earning capacity from inability to work proximately caused by the **bodily injury** sustained. Disability Benefits include all expenses reasonably incurred in obtaining, from others, ordinary and necessary services to replace those the injured person would have performed:

~~(1) not for income; and~~

  (2) for the benefit of his or her household.

c. Death Benefits of $5,000 per individual. Death Benefits are in addition to the Medical and Disability Benefits provided under this policy. We may pay Death Benefits to the executor or administrator of the deceased, to any of the deceased's relatives by blood, legal adoption, or marriage, or to any person appearing to us to be equitably entitled to such benefits.

3. If Extended Personal Injury Protection is shown in the Declarations, the benefits shall consist of:

a. (1) Medical Benefits, meaning 100% for the **named insured** and relatives and 80% for persons other than the **named insured** or **relatives** of the following schedule of maximum charges specified in the Florida Motor Vehicle No-Fault Law, section 627.736, Florida Statutes, for **medically necessary** medical, surgical, X-ray, dental and rehabilitative services, including prosthetic devices and **medically necessary** ambulance, hospital and nursing services, if the injured person receives initial services and care within 14 days after the **motor vehicle** accident:

  (a) for emergency transport and treatment by providers licensed under chapter 401, Florida Statutes, 200 percent of Medicare.

  (b) for emergency services and care provided by a hospital licensed under chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.

  (c) for emergency services and care as defined by s. 395.002, Florida Statutes, provided in a facility licensed under chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

  (d) for hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

  (e) for hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

**(f)** for all other medical services, sup-
plies, and care, 200 percent of the
allowable amount under:

1) the participating physicians fee
schedule of Medicare Part B,
except as provided in **2)** and **3)**
below.

2) Medicare Part B, in the case of
services, supplies, and care
provided by ambulatory surgical
centers and clinical laboratories.

3) the Durable Medical Equipment
Prosthetics/Orthotics and Sup-
plies fee schedule of Medicare
Part B, in the case of durable
medical equipment.

However, if such services, supplies,
or care is not reimbursable under
Medicare Part B, as provided in **(f)**
above, we will limit reimbursement
to 80 percent of the maximum reim-
bursable allowance under workers'
compensation, as determined under
s. 440.13, Florida Statutes, and
rules adopted thereunder which are
in effect at the time such services,
supplies, or care is provided. Ser-
vices, supplies or care that is not
reimbursable under Medicare or
workers' compensation will not be
reimbursed by us.

**(2)** For purposes of the above, the appli-
cable fee schedule or payment limitation
under Medicare is the fee schedule or
payment limitation in effect on March 1
of the year in which the services, sup-
plies, or care is rendered and for the
area in which such services, supplies or
care is rendered and for the applicable
fee schedule or payment limitation ap-
plies throughout the remainder of that
year, notwithstanding any subsequent
change made to the fee schedule or
payment limitation, except that it will not
be less than the allowable amount under
the applicable schedule of Medicare
Part B for 2007 for medical services,
supplies, and care subject to Medicare
Part B.

However, the Medical Benefits shall
provide reimbursement only for such:

**(a)** initial services and care that are law-
fully provided, supervised, ordered,
or prescribed by a physician li-
censed under chapter 458 or chap-
ter 459, Florida Statutes, a dentist
licensed under chapter 466, Florida
Statutes, or a chiropractic physician
licensed under chapter 460, Florida
Statutes, or that are provided in a
hospital or in a facility that owns, or
is wholly owned by, a hospital. Ini-
tial services and care may also be
provided by a person or entity li-
censed under part III of chapter 401,
Florida Statutes, which provides
emergency transportation and treat-
ment; and

**(b)** followup services and care referred
by the health care provider of the
initial services and care, consistent
with the underlying medical diagno-
sis rendered in the initial services
and care that are lawfully provided,
supervised, ordered or prescribed
by a physician licensed under chap-
ter 458 or chapter 459, Florida Stat-
utes, a chiropractic physician li-
censed under chapter 460, Florida
Statutes, a dentist licensed under
chapter 466, Florida Statutes, to the
extent permitted by applicable law
and under the supervision of such
physician, osteopathic physician,
chiropractic physician, or dentist, by
a physician assistant licensed under
chapter 458 or chapter 459, Florida
Statutes, or an advanced registered
nurse practitioner licensed under
chapter 464, Florida Statutes.
Followup services and care may
also be provided by the following
persons or entities:

1) a hospital or ambulatory surgical
center licensed under chapter
395, Florida Statutes.

2) an **entity wholly owned** by one
or more physicians licensed
under chapter 458 or chapter
459, Florida Statutes, chiroprac-
tic physicians licensed under
chapter 460, Florida Statutes, or
dentists licensed under chapter
466, Florida Statutes, or by
such practitioners and the
spouse, parent, child, or sibling
of such practitioners.

3) an entity that owns or is wholly
owned, directly or indirectly, by
a hospital or hospitals.

4) a physical therapist licensed
under chapter 486, Florida Stat-

89366 (6-13)

utes, based upon a referral by a provider described in **(b)** immediately above.

5) a health care clinic licensed under part X of chapter 400, Florida Statutes, which is accredited by an accrediting organization whose standards incorporate comparable regulations required by this state, or:

a) has a medical director licensed under chapter 458, Florida Statutes, chapter 459, Florida Statutes, or chapter 460, Florida Statutes;

b) has been continuously licensed for more than 3 years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

c) provides at least four of the following medical specialties:

i general medicine.
ii radiography.
iii orthopedic medicine.
iv physical medicine.
v physical therapy
vi physical rehabilitation.
vii prescribing or dispensing outpatient prescription medication.
viii laboratory services.

Medical Benefits do not include massage as defined in s. 480.033, Florida Statutes, or acupuncture as defined in s. 457.102, Florida Statutes, regardless of the person, entity, or licensee providing massage or acupuncture, and a licensed massage therapist or licensed acupuncturist may not be reimbursed for Medical Benefits under this provision.

b. Disability Benefits, meaning:

(1) 80% for the **named insured** and relatives; and

(2) 60% for persons other than the **named insured** or relatives

of any loss of gross income and loss of earning capacity from inability to work prox-

imately caused by the **bodily injury** sustained. Disability Benefits include all expenses reasonably incurred in obtaining, from others, ordinary and necessary services to replace those the injured person would have performed:

(1) not for income; and

(2) for the benefit of his or her household.

c. Death Benefits of $5,000 per individual. Death Benefits are in addition to the Medical and Disability Benefits provided under this policy. We may pay Death Benefits to the executor or administrator of the deceased, to any of the deceased's relatives by blood, legal adoption, or marriage, or to any person appearing to **us** to be equitably entitled to such benefits.

B. **EXCLUSIONS**

We will not pay Personal Injury Protection Benefits for **bodily injury**:

1. to the **named insured** and relatives residing in the same household while occupying a **motor vehicle** owned by the **named insured** that is not an **insured motor vehicle** under this coverage.

2. sustained by any person operating the **insured motor vehicle** without the express or implied consent of the **named insured**.

3. to a person causing injury to himself or herself intentionally.

4. to a person injured while committing a felony.

5. sustained by any person entitled to Personal Injury Protection Benefits under another policy. This exclusion does not apply to the **named insured** or a **relative** residing in the same household.

6. to any person who is the **owner** of a **motor vehicle** with respect to which security is required under the Florida Motor Vehicle No-Fault Law. This exclusion does not apply with respect to the **named insured**.

7. to a person who sustains such **bodily injury** while **occupying** a **motor vehicle** located for use as a residence or premises.

8. to any pedestrian, other than the **named insured** or his or her **relative**, that is not a legal resident of Florida.

C. **LIMITS OF LIABILITY**

1. The maximum aggregate amount **we** will pay for Medical Benefits and Disability Benefits shall be $10,000 when it has been determined, by a physician licensed under chapter 458 or chapter 459, Florida Statutes, a dentist licensed under chapter 466, Florida Statutes, a physician assistant licensed under chapter 458 or chapter 459, Florida Statutes, or an advanced registered

nurse practitioner licensed under chapter 464, Florida Statutes, that the injured person had an **emergency medical condition**. However, Medical Benefits shall be limited to $2,500 when the injured person did not have an **emergency medical condition** as determined by:

   a. a health care provider, as described in **A. COVERAGE, 2.a.(2)(a) or 3.a.(2)(a)**, which provided the initial services and care; or

   b. a health care provider, as described in **A. COVERAGE, 2.a.(2)(b) or 3.a.(2)(b)**, which provided the followup services and care.

2. **We** will pay no more than $5,000 per individual for Death Benefits. Death Benefits are in addition to the Medical and Disability Benefits provided under this policy.

3. The Limit of Liability is not increased because of the number of:
   a. persons insured;
   b. policies or bonds that apply;
   c. vehicles involved; or
   d. claims made.

4. Any amount we pay will be reduced by:
   a. any amounts paid, payable, or required to be provided under the workers compensation laws of any state.
   b. any benefits received under the Florida Motor Vehicle No-Fault Law for the same items of loss and expense covered under this policy.

5. The deductible will be applied to 100% of the expenses and losses described under **A. COVERAGE** above. Such deductible will apply:
   a. only to the **named insured**, if designated PIP Deductible (X); or
   b. only to the **named insured** and each dependent **relative**, if designated PIP Deductible (Y)
as shown in the Declarations under Personal Injury Protection.
However, the deductible shall not apply to Death Benefits.

6. Any amount we pay under Medical Benefits will be limited by the applicable percentage of the schedule of maximum charges, as shown under **SECTION II - PERSONAL INJURY PROTECTION INSURANCE, A. COVERAGE, 2.a. and 3.a.** of this coverage form, as set forth by Florida Motor Vehicle No-Fault Law.

## SECTION III - CONDITIONS
### A. Policy Period; Territory
This coverage applies only to accidents which occur during the policy period:

1. in the state of Florida; and

2. outside the state of Florida, but within the United States of America, its territories and possessions, or Canada with regard:
   a. to the **named insured** or **relatives** while occupying the **insured motor vehicle**; or
   b. to the **named insured** while occupying a **motor vehicle** owned by a **relative** and for which security is maintained under the Florida Motor Vehicle No-Fault Law.

### B. Fraud
According to Florida Statutes 627.736, benefits are not due or payable to or on the behalf of an insured person if that person has committed, by a material act or omission, insurance fraud relating to Personal Injury Protection coverage under this policy, if the fraud is admitted to in a sworn statement by the insured or established in a court of competent jurisdiction. Any insurance fraud voids all coverage arising from the claim related to such fraud under the Personal Injury Protection coverage of the insured person who committed the fraud, irrespective of whether a portion of the insured person's claim may be legitimate, and any benefits paid before the discovery of the fraud is recoverable by **us** in its entirety from the person who committed insurance fraud. The prevailing party is entitled to its costs and attorney fees in any action in which it prevails in **our** action to enforce **our** right of recovery under this paragraph.

If **we** have a reasonable belief that a fraudulent insurance act, for the purposes of coverage under this coverage form, has been committed, **we** shall notify the claimant, in writing, within 30 days after submission of the claim that the claim is being investigated for suspected fraud. Beginning at the end of the initial 30-day period, **we** have an additional 60 days to conduct fraud investigation. No later than 90 days after the submission of the claim, **we** must deny the claim or pay the claim with simple interest. Interest shall be assessed from the date the claim was submitted until the day the claim is paid. All claims denied for suspected fraudulent insurance acts shall be reported to the Division of Insurance Fraud.

### C. Other Insurance
1. Any Automobile Medical Payments or Uninsured Motorist Coverage, to the extent coverage is afforded by the policy, shall be excess over the benefits paid or payable, or that would have been paid or payable except for the application of a deductible, under the Florida Motor Vehicle No-Fault Law.

2. Any Automobile Medical Payments Coverage, to the extent coverage is afforded under this policy, shall pay the portion of any claim for Personal Injury Protection Medical Benefits:

89366 (6-13)

    **a.** which is otherwise covered, but is not payable due to the 80% limitation placed upon Medical Benefits in this endorsement; and

    **b.** regardless of whether the full amount of Personal Injury Protection coverage has been exhausted.

Benefits shall not be payable for the amount of any deductible which has been selected.

**D. Suit Against Us**

We may not be sued unless there has been full compliance with all the terms of this endorsement. Before filing a suit for benefits under the Florida Motor Vehicle No-Fault Law, the injured person must provide written notice of intent to initiate litigation. Such notice may not be sent until the claim is overdue and must comply with the requirements set forth in the Florida Motor Vehicle No-Fault Law.

**E. Notice**

If an accident occurs, the named insured must tell us as soon as practicable. Suit may be started by or on behalf of an injured person or his or her surviving dependents against one who may be liable. In that case, the person starting suit must promptly send us a copy of the legal papers.

**F. Medical Reports; Proof of Claim; Rehabilitation Notice**

As soon as practicable, the injured person or someone on his or her behalf shall send us written proof of claim, under oath if required. This must include full details of the bodily injury, treatment, and rehabilitation received and considered. It must also include such other information as may help us determine the amount we must pay. At our request the injured person or someone acting on the behalf of the injured person must authorize us to obtain medical and other records which pertain to the bodily injury. The injured person must, at our expense, submit to mental or physical examinations by doctors we select as often as we may reasonably require. An injured person's refusal to submit to or failure to appear at two examinations raises a rebuttable presumption that the refusal or failure was unreasonable. If an injured person unreasonably refuses to submit to or fails to appear at an examination, we are no longer liable for subsequent Personal Injury Protection Benefits.

**G. Provisional Premium**

    **1.** If any change in the rules, rates or rating plans, or premiums or minimum premiums which apply to this coverage are made because of an adverse judicial finding as to the constitutionality of any part of the Florida Motor Vehicle No-Fault Law with regard to the exemption of persons from tort liability, the premium shown in the Declarations for Bodily Injury and Property Damage

coverage or Combined Liability coverage and Medical Payments and Uninsured Motorist coverage will be provisional and subject to being recalculated.

    **2.** If this policy is a renewal, such recalculation will include a determination of the amount of any return premium previously credited or refunded to the named insured pursuant to the Florida Motor Vehicle No-Fault Law with respect to insurance afforded under a previous policy.

    **3.** If the final premium exceeds the premium shown in the Declarations, the named insured will pay to us:

        **a.** the excess; and

        **b.** the amount of any return premium previously credited or refunded.

**H. Dispute Between an Injured Person and Us**

In a dispute between an injured person and us, or between an assignee of an injured person's rights and us, upon request, we must notify the injured person or the assignee that the policy limits under the Florida Motor Vehicle No-Fault Law have been reached within 15 days after the limits have been reached.

**I. Examination Under Oath**

An injured person seeking benefits under s.s. 627.730-627.7405, Florida Statutes, must comply with the terms of this policy, which include, but are not limited to, submitting to an examination under oath. The scope of questioning during the examination is limited to relevant information or information that could reasonably be expected to lead to relevant information. Compliance with the examination under oath requirement pursuant to the Florida Motor Vehicle No-Fault Law is a condition precedent to receiving benefits.

**J. Personal Injury Protection Log**

We shall create and maintain for each injured person a log of Personal Injury Protection Benefits paid by us on behalf of the injured person. If litigation is commenced, we shall provide to the injured person a copy of the log within 30 days after receiving a request for the log from the injured person.

**K. Partial Payment or Rejection of Claim**

If we pay only a portion of a claim or reject a claim due to an alleged error in the claim, we, at the time of the partial payment or rejection, shall provide an itemized specification or explanation of benefits due to the specified error. Upon receiving the specification or explanation, the person making the claim, at the person's option and without waiving any other legal remedy for payment, has 15 days to submit a revised claim, which shall be considered a timely submission of written notice of a claim.

All other policy terms and conditions apply.

89368 (3-11)

# CONTRACTUAL LIABILITY AMENDATORY ENDORSEMENT
## Automobile Policy

It is agreed:

Under **SECTION I - DEFINITIONS**, the definition **5. Insured contract** is deleted and replaced with the following:

5. **Insured contract** means:
   a. a lease of premises;
   b. a sidetrack agreement;
   c. an easement or license agreement in connection with vehicle or pedestrian private railroad crossings at grade;
   d. any other easement agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
   e. an indemnification of a municipality as required by ordinance, except in connection with work for a municipality; or
   f. that part of any other contract or agreement pertaining to **your** business under which **you** assume the tort liability of another to pay damages because of **bodily injury** or **property damage** to a third person or organization, if the contract or agreement is made before the **bodily injury** or **property damage** occurs. Tort liability means liability that would be imposed by law in the absence of any contract or agreement.

   g. that part of any contract or agreement entered into, as part of **your** business, pertaining to the rental or lease, by **you** or any of **your** employees of an **automobile**. However, such contract or agreement shall not be considered an **insured contract** to the extent that it obligates **you** or any of **your** employees to pay for **property damage** to any **automobile** rented or leased by **you** or any of **your** employees.

An **insured contract** does not include that part of any contract or agreement:
   a. that pertains to the loan, lease or rental of an **automobile** to **you** or any of **your** employees if the **automobile** is loaned, leased or rented with a driver; or
   b. that holds a person or organization engaged in the business of transporting property for hire harmless for **your** use of **your automobile** over a route or territory that person or organization is authorized to serve by public authority.

All other policy terms and conditions apply.

89368 (3-11)

Page 1 of 1